**Patricia McGuirk GERACI, Plaintiff,**

v.

**MOODY–TOTTURP INTERNATIONAL, INC., Defendant.**

**Civ. A. No. 94–1093.**

United States District Court, W.D. Pennsylvania.

June 7, 1995.

Paul J. DeRenzo, Cohen & DeRenzo, Pittsburgh, PA, for plaintiff.

Elizabeth A. Malloy, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for defendant.

## OPINION

and

## ORDER OF COURT

AMBROSE, District Judge.

Plaintiff Patricia McGuirk Geraci ("Geraci") has filed this employment discrimination action alleging that her former employer, Defendant Moody–Tottrup International, Inc. ("MTI") discriminated against her on the basis of her pregnancy when she was laid off from her employment as an inspection coordinator at MTI. Pending before the Court is MTI's Motion for Summary Judgment. For

the following reasons, the Motion will be granted.

## I. BACKGROUND FACTS.

The following facts are undisputed unless otherwise noted. MTI is in the business of providing inspections of equipment and pipe for clients who wish to purchase these materials, so as to insure that the materials meet technical specifications and other requirements. (Wright Decl. ¶ 3.) At the time Geraci was employed at MTI, its corporate office was located in Pittsburgh, Pennsylvania.[1] (Wright Decl. ¶ 5.) From its Pittsburgh office, MTI staff coordinated the activities of its inspectors, who often performed inspections on site at various locations throughout the United States. (Wright Decl. ¶ 6.) It is not clear from the record how many individuals were employed at MTI's Pittsburgh office.

Geraci began her employment at MTI in 1987 as a Clerk Typist. (Geraci Dep. at 12–13; Def. Ans. to Interrog. 3, Def. Exh. C.) Over the next few years, Geraci received a number of merit promotions and worked in various positions at MTI until December 2, 1991, when she was promoted to her last position as an Inspection Coordinator. (Geraci Dep. at 17; Def. Ans. to Interrog. 3.) As Inspection Coordinator, Geraci's direct supervisor was Vice President Michael J. Cribbins, until Mr. Cribbins was fired in December of 1991. (Geraci Dep. at 17.) After Cribbins was fired, Geraci asserts that she performed Cribbins' job and that she had no formal supervisor until February of 1992, when Tim Trott became Manager of Equipment Inspections and Geraci's new supervisor.[2] (Geraci Dep. at 47–48; Trott Dep. at 10.) Even if Geraci had no formal supervisor for the three months between the time Michael Cribbins was fired and Tim Trott was hired, Geraci would report directly to MTI President Robert Wright with any especially difficult problems she encountered in her job. (Geraci Dep. at 48.) Tim Trott supervised Geraci from February 1992 until she was terminated from her employment in January 1993.

During the last week of December 1992, Geraci believed that she was pregnant, and she performed a pregnancy test at home with positive results. (Geraci Dep. at 71, 73.) She did not immediately inform either Trott or Wright of her pregnant status. Rather, she wanted to delay telling MTI management until after the annual raises had been announced sometime in January or February, because she feared that if management knew she were pregnant, she would not receive a raise. (Geraci Dep. at 77–78.) Geraci did, however, inform six coworkers that she was pregnant in late December and early January 1993. These six coworkers were Pat McQuillan, Ileen Jarlowski, Tori Boland, Michelle Klotz, Dale Gabauer, and Debbie Zunich. (Geraci Dep. at 73.) Geraci indicated to these coworkers that she preferred that MTI management (presumably Tim Trott and Robert Wright) not be told about her pregnancy until after the annual raises had been announced. (Geraci Dep. at 76.)

Geraci initially revealed the news that she was pregnant to McQuillan and Jarlowski in late December because they were her friends. (Geraci Dep. at 74.) Geraci told Klotz about the positive pregnancy test at a wedding reception on New Years Eve. (Geraci Dep. at 75.) At the wedding reception, other people were also part of the conversation between Klotz and Geraci when Geraci was discussing the positive test results, including Pat McQuillan, Mike Cribbins, their wives, and Geraci's husband. However, Geraci had already told McQuillan about her pregnancy, and Mike Cribbins was no longer an MTI employee. There is no evidence that Mrs. McQuillan, Mrs. Cribbins, and Mr. Geraci had any connection to MTI or Trott or Wright except for the fact that they were married to MTI employees or former employees. In addition, although other people were sitting "further down the table" when the conversation at the wedding reception occurred, Geraci does not know who they were. (Geraci Dep. at 75.) There is no

---

1. MTI has since relocated its corporate office to Houston, Texas.

2. MTI contends that Geraci was, in fact, supervised during that time period by MTI President Robert Wright. We do not find this disputed issue of fact material to the pending motion.

indication from the record that these other wedding guests were also MTI employees.

Geraci next told Tori Boland that she was pregnant in the first week of January after Boland encountered Geraci in the bathroom and noticed that Geraci was having some trouble buttoning her pants. (Geraci Dep. at 75.) The next week Geraci told both Dale Gabauer and Debbie Zunich about the positive pregnancy test. The record reveals no evidence that anyone other than the people Geraci herself told knew or suspected that Geraci was pregnant, or that any of the six coworkers who knew about the pregnancy from Geraci had told anyone else at work before Geraci was terminated.

On January 26, 1993, about two weeks after Geraci told Gabauer and Zunich about her positive pregnancy test, Tim Trott notified Geraci that she was being laid off.[3] (Geraci Dep. at 68.) The reason given to Geraci was that there was a decline in MTI's business revenues and that a decision had been made to lay off Geraci in order to cut down on costs. MTI contends that the decision to lay off Geraci was actually made in the middle of December, well in advance of the date that Geraci was notified that she was being terminated, but that Trott and Price wanted to delay notifying Geraci of the bad news until after the Christmas holidays. (Wright Decl. ¶¶ 14, 16.) MTI has submitted the affidavits of Trott and Price in which they state that they did not know Geraci was pregnant either in mid-December when they made the initial decision to terminate Geraci, or on January 27, the date Defendants contend Geraci was informed that she was being terminated. They further state that they had heard no office chatter or rumors to the effect that Geraci was pregnant prior to her termination. (Wright Decl. ¶ 24; Trott Decl. ¶ 7.)

After Trott informed Geraci that she was being terminated, Geraci asked if she would be rehired if business picked up and she was told that business would not pick up and that she should look for another job. (Geraci Dep. at 81.) At that point, she informed Trott that she was pregnant and that she had

a doctor's appointment scheduled for the following day to confirm the pregnancy. (Geraci Dep. at 82.) Geraci then met with Wright and informed him of her situation. Wright advised Geraci that she should have her doctor confirm the pregnancy, advise him of the results of the doctor-supervised pregnancy test, and that MTI would arrange for continuation of her health benefits until after the birth of the baby. She was, in fact, granted health care benefits until after the birth of her child. She also received three weeks severance pay upon termination.

Within two months of terminating Geraci, MTI placed an advertisement in the Pittsburgh Post–Gazette for an "Inspection Coordinator" position (Wright Decl. ¶ 29), a position which Geraci alleges is the same as the one from which she was terminated. MTI contends that the advertised position was a "new" position created in response to the possibility of acquiring a large Malaysian contract. (Wright Decl. ¶ 29.) As a condition of this alleged contract, MTI contends, the "Malaysian people" required an inspection coordinator with hands-on technical inspection and report-writing experience. (Wright Decl. ¶ 27.) According to MTI, Geraci lacked the necessary qualifications to satisfy the rigorous demands of the potential Malaysian contract. (Wright Decl. ¶ 28; Trott Decl. ¶ 9.) The newspaper advertisement served to heighten Geraci's suspicions that her termination was less than lawful, and she contacted MTI to inquire of Pat McQuillan if the advertisement were for her position, although she never applied for the job, presumably because she was under the impression that it would be a futile gesture. (Geraci Dep. at 93.) The contract was never awarded to MTI, and the position was consequently never filled. (Wright Decl. ¶ 30.)

Geraci argues that she was terminated on account of her sex because she was pregnant, that the company did not experience a decline in business necessitating layoffs, that the newspaper advertisement in reality sought a replacement for her position and that the Malaysian contract was merely a post-lawsuit fabrication on the part of MTI to

---

**3.** MTI contends that she was terminated on January 27, 1993. This is not, of course, a genuine issue of material fact that would preclude summary judgment.

protect itself in this action. Geraci filed a complaint with the EEOC and the Pennsylvania Human Relations Commission and subsequently filed the action that is before the Court, alleging that MTI's actions in terminating her from her employment based on her pregnancy violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e–17 (1994) ("Title VII"). MTI contends that summary judgment must be granted because Geraci has failed to adduce sufficient evidence to satisfy her burden of establishing a prima facie case of pregnancy discrimination.

## II. *SUMMARY JUDGMENT STANDARD.*

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.Proc. 56(c). In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact, and an issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Where the nonmovant will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552.

## III. *DISCUSSION.*

 Title VII prohibits employers from discharging an employee because of that em-

ployee's gender, which includes actions taken on the basis of an employee's pregnancy. 42 U.S.C.A. §§ 2000e–2(a)(1) and 2000e(k) (1994). Discrimination cases alleging disparate treatment, such as the present case, fall within one of two categories: "pretext" and "mixed motives" cases. *Ezold v. Wolf, Block, Schorr and Solis–Cohen,* 983 F.2d 509, 522 (3d Cir.1992). The type of case presented depends upon the evidence of discrimination provided by the plaintiff. A plaintiff may either provide direct evidence of discrimination, the "mixed-motive" case, or more commonly, show discrimination through the indirect, burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981), the so-called "pretext" case. Geraci does not argue that the evidence presented entitles her to a mixed-motives analysis; rather, she presents her case as falling under the pretext theory of discrimination.

 In a pretext case, an employee argues that the employer's facially legitimate reason for the adverse employment decision is false and is merely a pretext disguising its real reason for the adverse decision, *i.e.,* discrimination. Under the pretext theory, the plaintiff has the initial burden of establishing a prima facie case of employment discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Once the prima facie case is established, a presumption of discrimination is established and the burden is then shifted to the defendant to produce evidence establishing a legitimate non-discriminatory reason for the adverse employment action.[4] *Id.* If the defendant meets this burden of production, the presumption of discrimination drops from the case, and the plaintiff must then satisfy the ultimate burden of proving discrimination by showing that the employer's proffered explanation was not the true reason for the employment decision and that gender was. *Id.* Although most summary judgment cases fo-

---

4. It is important to note that while the burden of production shifts at this point, the ultimate burden of persuasion remains at all times with the plaintiff. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

cus on whether a plaintiff can demonstrate a genuine issue of fact regarding pretext, summary judgment is also appropriate if the plaintiff fails to raise a genuine issue of material fact regarding one or more elements of the prima facie case. *Fowle v. C & C Cola,* 868 F.2d 59, 62 (3d Cir.1989).

■ In order to establish a prima facie case of discrimination, a plaintiff must at a minimum show that she was a member of a protected class, that she was qualified for the employment position, and that she was not hired or discharged from that position " 'under circumstances that give rise to an inference of discrimination.' " *Waldron v. SL Industries, Inc. et al.,* 56 F.3d 491, 494 (3d Cir.1995) (quoting *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093). MTI contends that as part of a prima facie case of discrimination based on pregnancy, a plaintiff must initially show that the employer knew she was pregnant, and consequently a member of the protected class, in order to establish an inference of discrimination. In this case, MTI argues that summary judgment is appropriate because Geraci has adduced no evidence from which a reasonable jury could infer that Price or Trott knew she was pregnant when she was terminated from her position. We agree.

■ The issue of whether a plaintiff must show that her employer knew of her pregnancy in order to satisfy her prima facie case under Title VII is apparently one of first impression in the Third Circuit. At least one court having squarely addressed the issue, however, has concluded that a plaintiff must establish that her employer knew of her pregnancy to trigger the presumption of discrimination established by the prima facie case. *See DeNardo v. Clarence House Imports, Ltd.,* 870 F.Supp. 227 (N.D.Ill.1994). As Judge Williams so persuasively explains in *DeNardo* :

> [T]he issue of whether or not [Plaintiff] was a member of the protected class . . . is trickier than it appears. Unlike other protected classes, such as race, gender or national origin, pregnancy, especially in its early stages, is not always readily discernible. It is therefore possible for an individual to qualify as a member of the protected

class, as a pregnant woman, even though her employer has no actual knowledge that she is pregnant. In these cases, it hardly seems fair or even rational to infer discrimination based on the burden shifting formula laid out in *McDonnell Douglas.* The rationale behind the *McDonnell Douglas* presumption is that when an employer takes action against a member of a protected class without a legitimate nondiscriminatory reason for doing so, it is reasonable to presume that such action was motivated by impermissible factors. *See Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094. However, if the employer does not know that an individual is a member of a protected class, such a presumption ceases to be rational.

*DeNardo,* 870 F.Supp. at 231. We agree with this reasoning and conclude for the same reasons that a plaintiff must show as part of her prima facie case of pregnancy discrimination that her employer knew she was pregnant and, consequently, a member of a protected class.

In this case, a careful review of the record evidence demonstrates that Geraci has not sustained her burden of establishing a prima facie case of pregnancy discrimination because there is insufficient evidence from which a reasonable jury could conclude that MTI management knew of Geraci's pregnancy either at the time she was terminated in late January or earlier, at the time MTI contends that the decision to lay off Plaintiff was made in mid-December. First, we note that Geraci presents no evidence disputing Trott's and Wright's affidavits stating that the decision to terminate Geraci occurred in mid-December, one week before Geraci herself knew that she was pregnant, so that it would have been impossible for Trott or Wright to know of her pregnant status. This in itself is enough to provide sufficient grounds for granting summary judgment.

However, even giving Geraci the benefit of the doubt and reviewing the evidence as of the day she was actually terminated, we conclude that the evidence is insufficient to support an inference that MTI management knew that Geraci was pregnant. Geraci ar-

gues that "[h]er pregnancy became common knowledge in the office as it was discussed openly among coemployees at a wedding reception and as at least one employee noticed she was having trouble buttoning her pants." Pl. Br. at 8. However, we believe that something more than the mere fact that several MTI employees knew about her pregnancy is necessary to support an inference that either Trott or Wright would have known about Geraci's pregnancy. *See, e.g., Pierson v. Mrs. Fields Cookies,* 857 F.Supp. 867, 869 (D.Utah 1994) (plaintiff's contention that employer must have known of plaintiff's pregnancy because coemployees knew and because reason for sick leave was morning sickness which would surely have been communicated to the plaintiff's supervisor was "speculation" on plaintiff's part and insufficient to defeat summary judgment motion.) This is especially true considering that Geraci revealed her news selectively to only six MTI employees and further told these employees that she preferred that MTI management not be advised about her pregnancy until after the annual raises were announced. In this case, there is no dispute that Geraci herself did not inform Trott or Wright about her pregnancy until the day she was actually terminated. In addition, Geraci concedes that she does not know whether Trott or Wright knew about her pregnancy when she was terminated. (Geraci Dep. at 87). Geraci contends that "there's all kinds of cliques in the office and once one person knows something, everybody knows it" (Geraci Dep. at 87); however, this is simply speculation unsupported by any facts. The record reveals no evidence from which it could be inferred that Geraci's pregnancy became "common knowledge" around the office, as Geraci contends. There is no evidence that anyone in the office, other than those Geraci told, commented about Geraci's pregnancy. There is no evidence that the employees who had been told by Geraci had repeated the news to other employees at MTI, let alone to MTI management. Nor is there any evidence that Geraci's pregnancy was the subject of office conversations before she was terminated and that Trott or Wright may have been privy to such conversations.

Geraci contends that because Boland saw Geraci in the bathroom having difficulty buttoning her pants, this supports an inference that Geraci's pregnancy was "common knowledge" around the office. We disagree. In January 1993, Geraci was in the first trimester of her pregnancy. (Geraci Dep. at 75.) There is no evidence regarding how much weight Geraci had gained by the date she was terminated, or that her appearance was such that others in her office believed or suspected that she was pregnant in the months immediately preceding her termination, or even that her appearance had changed at all. There is no evidence that Boland herself suspected that Geraci was pregnant before Geraci told her the news. Without more, it is simply too great a leap to infer that merely because Boland noticed in the restroom that Geraci was having trouble with her clothes, that Boland and everyone else in the office, including Trott and Wright, would have concluded that Geraci was pregnant.

As to the evidence that Geraci's pregnancy was openly discussed at a wedding reception, it is true that other persons were present at the reception. However, there is no evidence that these other unknown wedding guests could have overheard the conversation between Geraci and Klotz or, if they did overhear the conversation, that they were also MTI employees who could have spread the news about Geraci's pregnancy at MTI so that it would eventually reach the ears of MTI management. Unfortunately for Geraci, the record evidence before this Court amounts to no more than mere speculation that MTI management knew of Geraci's pregnancy when Geraci was terminated in January 1993. Because speculation unsupported by fact cannot create a genuine issue of fact precluding summary judgment, *see Naas v. Westinghouse Electric Corp.,* 818 F.Supp. 874, 881 (W.D.Pa.1993), we find that Geraci has failed to meet her burden of establishing a prima facie case of discrimina-

tion, and summary judgment in favor of MTI will accordingly be granted.[5]

---

**5.** Because of our decision today, we need not address MTI's alternative ground for summary judgment, *i.e.,* that Geraci has failed to adduce sufficient evidence to demonstrate that MTI's reasons for terminating her were pretextual.