

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-30-1996

# Geraci v. Moody-Tottrup Intl

Precedential or Non-Precedential:

Docket 95-3335

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Geraci v. Moody-Tottrup Intl" (1996). *1996 Decisions.* Paper 206.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/206

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT


No. 95-3335


PATRICIA MCGUIRK GERACI,

Appellant


v.


MOODY-TOTTRUP, INTERNATIONAL, INC.


(Caption amended as per Clerk's order dated 11-9-95.)


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 94-01093)


Argued January 31, 1996

Before:  GREENBERG, NYGAARD, Circuit Judges and
LAY, Senior Circuit Judge[298]

(Opinion Filed: April 30, 1996)


DAVID J. LOZIER, ESQUIRE
(Argued)
Cohen & DeRenzo
Two Chatham Center
Suite 985
Pittsburgh, PA 15219
Attorney for Appellant

ELIZABETH A. MALLOY, ESQUIRE
(Argued)
Klett, Lieber, Rooney & Schorling
One Oxford Centre
40th Floor
Pittsburgh, PA 15219-6498
Attorney for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Patricia McGuirk Geraci sued her employer, alleging that she had been unlawfully terminated because she was pregnant. The district court granted summary judgment to Geraci's employer because she had not shown that the employer knew Geraci was pregnant when it terminated her. The district court held that given this evidentiary hiatus, Geraci could not make out a prima facie case of pregnancy discrimination. We will affirm.

I.

The facts of this case are set forth in the district court's thorough opinion, and we need only summarize. See Geraci v. Moody-Tottrup Int'l, Inc., 905 F. Supp. 241, 243-45 (W.D. Pa. 1995). Moody-Tottrup is in the business of inspecting pipe and other materials. It hired Geraci in 1987 as a Clerk Typist but consistently promoted her, until she became an Inspection Coordinator in 1991. It appears from the record that Geraci was an exemplary employee during her tenure at Moody.

In the last week of 1992, Geraci suspected that she was pregnant and performed a home pregnancy test; the results were positive. She decided not to inform management at that time, however, fearing that she would not receive her annual raise scheduled for January or February. Geraci did tell six of her twenty co-workers (none of whom were members of management), but specifically asked them not to tell her superiors. There is no

evidence that any of them did so, nor that management was otherwise informed of Geraci's pregnancy at that time.

In late January 1993, management laid Geraci off because of a decline in company revenue. It is undisputed that Moody decided to lay Geraci off in mid-December, before Geraci herself knew she was pregnant, but that it delayed telling her so as not to ruin her holidays.

When she was laid off, Geraci asked whether Moody would rehire her should business improve. Moody management advised her that she would not be rehired, and that she should look for another job. Geraci then told Moody that she was pregnant. Moody continued her health care benefits until after the baby was born and gave her three weeks severance pay.

A few months later, an advertisement appeared in the local newspaper for what appeared to be the same position from which Geraci had been terminated. According to Moody, this position arose to fill a large Malaysian contract, but the "Malaysian people" wanted an inspection coordinator with "hands-on" experience, which Geraci lacked. In any event, Geraci did not apply for this position, believing that it would be futile. Moody asserts that because the Malaysian contract did not materialize, the position was never filled.

In June 1994, after exhausting her administrative remedies, Geraci filed this suit in district court, alleging that Moody terminated her in violation of Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. §§ 2000e-2(a)(1), 2000e(k). After discovery, Moody moved for summary judgment, asserting that,

because there was no evidence that anyone in management knew Geraci was pregnant (either when Moody decided to terminate her or when it informed her of its decision), Moody could not have unlawfully discharged her because of her pregnancy.  The district court agreed.  See Geraci, 905 F. Supp. at 245-48.

## II.

### A.

Geraci has no direct evidence of unlawful discrimination. Instead, she bases her suit on the familiar burden-shifting framework first enunciated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 252-56, 101 S. Ct. 1089, 1093-95 (1981).  Under that framework, Geraci must first make out a prima facie case of unlawful discrimination.  Once she has done so, the burden of production then shifts to Moody to proffer a legitimate, nondiscriminatory reason for discharging her, at which point the presumption of discrimination arising from the prima facie case drops away, leaving the burden on Geraci to prove that Moody's proffered reasons were pretextual.

Here, Moody argues that we need not consider its reasons for terminating Geraci or whether they were pretextual, because Geraci failed to meet her threshold burden.  We therefore begin by determining the elements of the prima facie case of pregnancy discrimination, aware that, if Geraci failed to raise a genuine issue of material fact as to any of those elements, summary

judgment was properly granted.  E.g., Fowle v. C & C Cola, 868
F.2d 59, 62 (3d Cir. 1989).

                                B.

    Were Geraci alleging that Moody terminated her solely
because she is a woman, she could make out her prima facie case
by merely showing that she is a member of a protected class, that
she was qualified for her position, and that she was discharged
"under conditions that give rise to an inference of unlawful
discrimination."  Burdine, 450 U.S at 253, 101 S. Ct. at 1093.
Although often overlooked, the requirement that the adverse
employment action occur "under circumstances that give rise to an
inference of unlawful discrimination" is a critical one that
weighs heavily in this case.

    The McDonnell Douglas-Burdine burden-shifting framework was
created because only rarely will a plaintiff have direct evidence
of discrimination.  Gone are the days (if, indeed, they ever
existed) when an employer would admit to firing an employee
because she is a woman, over forty years of age, disabled or a
member of a certain race or religion.  To allow those genuinely
victimized by discrimination a fair opportunity to prevail,
courts will presume that, once the plaintiff has shown the above
elements, unlawful discrimination was the most likely reason for
the adverse personnel action.  The elements of that prima facie
case, however, must not be applied woodenly, but must rather be
tailored flexibly to fit the circumstances of each type of
illegal discrimination.  See McDonnell Douglas, 411 U.S. at 802

n.13, 93 S. Ct. at 1824 n.13; Torre v. Casio, Inc., 42 F.3d 825, 830 (3d Cir. 1994).

The traditional McDonnell Douglas–Burdine presumption quite properly makes no reference to the employer's knowledge of membership in a protected class because, in the vast majority of discrimination cases, the plaintiff's membership is either patent (race or gender), or is documented on the employee's personnel record (age discrimination). This case, however, is different. We cannot presume that an employer most likely practiced unlawful discrimination when it does not know that the plaintiff even belongs to the protected class. The employer's knowledge, in this class of cases, is a critical element of the plaintiff's prima facie case. Indeed, it is counterintuitive to infer that the employer discriminated on the basis of a condition of which it is wholly ignorant, and in this situation the bare McDonnell Douglas presumption no longer makes sense.

In other cases involving personal attributes not obvious to the employer, courts have regularly held that the plaintiff cannot make out a prima facie case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic. An employee's religion, for example, is often unknown to the employer, and we have accordingly required employees to inform their employers of their religious beliefs in order to make out a prima facie case of discrimination based on failure to make reasonable accommodations. See Protos v. Volkswagen, Inc., 797 F.2d 129, 133 (3d Cir.), cert. denied, 479 U.S. 972, 107 S. Ct. 474 (1986).

The same rule applies when the plaintiff alleges that she was discharged on account of her religion. See Beasley v. Health Care Serv. Corp., 940 F.2d 1085, 1088 (7th Cir. 1991).

Likewise, disabilities are often unknown to the employer, and, because of that, the plaintiff must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge. See Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932–33 (7th Cir. 1995). In Hedberg, a case filed under the Americans With Disabilities Act, a manager claimed he was dismissed because he had a life-threatening disease, but the court held that he must show that the employer knew of his illness, reasoning that an employer cannot fire someone because of a disability it knows nothing about. Id.; accord Morisky v. Broward County, No. 95-4808, 1996 WL 137386, *3 (11th Cir. Apr. 11, 1996) (per curiam); Landefeld v. Marion Gen. Hosp., 994 F.2d 1178, 1181–82 (6th Cir. 1993) (Rehabilitation Act of 1973).

Pregnancy, of course, is different in that its obviousness varies, both temporally and as between different affected individuals. It is difficult to imagine that an employer would not be aware that an employee is in the later stages of her pregnancy; at least if the employer sees the employee. When the pregnancy is apparent, or where plaintiff alleges that she has disclosed it to the employer, then a question of the employer's knowledge would likely preclude summary judgment. If the pregnancy is not apparent and the employee has not disclosed it to her employer, she must allege knowledge and present, as part

of her prima facie case, evidence from which a rational jury could infer that the employer knew that she was pregnant.

### III.

The application of this legal framework to the facts of Geraci's case need not detain us long.  Geraci was not visibly pregnant; indeed, even Geraci herself did not know until shortly before she told her coworkers.  She did not tell Moody management, and she requested that the six friends and co-workers to whom she disclosed her pregnancy not tell management.

Geraci argues that because she told six out of twenty co-workers that she was pregnant and that her pregnancy became a "common topic of discussion in the office," management must have known it before they terminated her.  But her managers filed declarations disclaiming knowledge, and Geraci presented no evidence to the contrary.  Geraci deposed only one of those co-workers whom she told of her pregnancy, and he testified that he did not tell management that she was pregnant.  Thus, Geraci would have us remand this case for trial on the sheer speculation that one or more of the people she entrusted with highly personal information violated her confidence and that members of Moody management lied about their lack of knowledge.  This is simply insufficient to create a genuine issue of material fact.  See Hedberg, 47 F.2d at 932 (speculation about employer's knowledge of disability does not create a genuine issue of material fact; "instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

Moody also points to undisputed evidence in the record that it decided to lay Geraci off before even she knew she was pregnant.  Again, Geraci offers only speculation that Moody must have really made its decision to terminate her in January rather than in December.  For the reasons already set forth, we must reject that speculation.

Finally, Geraci relies on <u>Fuentes v. Perskie</u>, 32 F.3d 759, 765 (3d Cir. 1994), for the proposition that a "pattern of discrimination" and evidence that defendant's asserted non-discriminatory reason was a pretext, supports an inference that defendant knew that she was pregnant.  That contention is illogical and unsupported by that case.

In <u>Fuentes</u>, we did say that a pattern of discrimination could support an inference of <u>pretext</u>, but we did not hold that evidence of pretext makes out the plaintiff's prima facie case.  Indeed, such a holding would make no sense.  Essentially, Geraci argues that because Moody had treated women (including pregnant women) badly in the past, it must have known that Geraci was pregnant, because she was treated badly.  This is flawed reasoning which warrants no discussion.

All of Geraci's remaining contentions go to the issue of pretext and given our conclusion that she has failed to make out a prima facie case of pregnancy discrimination, we need not discuss them.

IV.

We find error in neither the district court's reasoning nor its conclusion that Geraci failed to state a prima facie case. We will therefore affirm its summary judgment.

[298]Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.