**Surgret U. DOSS, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, labor organization; and Teamsters, Chauffeurs & Helpers Local Union No. 79, labor organization, Defendant.**

No. 8:99CV1569T17TGW.

United States District Court, M.D. Florida, Tampa Division.

April 24, 2001.

Lynn H. Cole, Lynn Hamilton Cole, P.A., Tampa, FL, Scott K. Goldsmith, Paul Egtvedt, Goldsmith & Associates, Ltd., Minneapolis, MN, for Surgret U. Doss, plaintiff.

Thomas J. Pilacek, Thomas J. Pilacek & Associates, Winter Springs, FL, Gary S. Witlen, Law Office of Gary S. Witlen, Washington, DC, for International Brotherhood of Teamsters, Teamsters, Chauffeurs & Helpers Local Union No. 79, labor organization, defendants.

### ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, District Judge.

This cause is before the Court on the Motion for Summary Judgment of Defendant International Brotherhood of Teamsters (Dkt.23), the Motion for Summary Judgment of Defendant Teamsters Local 79 (Dkt.20), Plaintiff's responses (Dkts.29, 32), and supporting documents (Dkts.21, 22, 24, 25, 26, 33, 38, 39).

### I. INTRODUCTION

Plaintiff challenges his October 5, 1998, discharge from the United Parcel Service (UPS), and asserts that the International Brotherhood of Teamsters (Teamsters) and Local 79 failed to represent his interests in advocating to the panel, and failed to represent his interests on the panel. (Dkt.1) Plaintiff also filed a grievance with the union's Ethical Practices Committee (EPC), and claims that EPC treated him unfairly when it did not assert jurisdiction in the matter. (Dkt.1) As a result, Plaintiff contacted the Equal Employment Opportunity Commission (EEOC), which provided him a right to sue letter dated April 8, 1999. (Dkt.1) Plaintiff alleges that the Teamsters and Local 79 breached their duty of fair representation under the National Labor Relations Act (NLRA). (Dkt.1).

Plaintiff contends that the actions of the Teamsters and Local 79 were racially motivated, and constitute discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act, Florida Statutes § 760.01 et seq. Plaintiff further alleges that the Teamsters's and Local 79's racial treatment denied him the right afforded to white citizens to make and enforce contracts in violation of 42 U.S.C. § 1981.

Plaintiff seeks compensatory and punitive damages and costs associated with this action.

### II. FACTUAL BACKGROUND

Plaintiff's description of the events of October 5, 1998 differs substantially from that of his employer, UPS.

Plaintiff alleges he stopped his truck at a McDonald's to call the office to ask if another driver needed any help. Plaintiff asserts that a supervisor came to his truck and accused him of taking an unauthorized break or stealing company time, which amounted to dishonesty, one of UPS's seven cardinal sins that could result in termination. Plaintiff said that the supervisor threatened his job, called him "son," and ordered him to stand at the back of his truck.

Plaintiff asserts that he took exception to the supervisor's term, and told him to refrain from using it. By Plaintiff's account, the two had a heated conversation and Plaintiff called the police, while the supervisor called the office for a driver to come and get Plaintiff. Eventually, another driver returned Plaintiff to the office, and Plaintiff was told that he would receive notice the next day regarding his continued employment pending further investigation.

The UPS supervisor recalls a different set of circumstances that night. Plaintiff's

supervisor states that he approached Plaintiff's truck because he heard loud music and saw him using a phone. According to the supervisor, when he approached the Plaintiff, Plaintiff seemed nervous and explained that he was calling the office to see if another driver needed any help. When the supervisor asked for the other driver's name to verify, Plaintiff changed his story and said he called someone else.

Plaintiff's supervisor then told him to step to the back of his truck while he checked his story. Plaintiff then started arguing with him and called the police because he wanted a witness there. The supervisor terminated Plaintiff for taking an unauthorized break and corresponding insubordination and arranged to have Plaintiff taken back to the office.

Within about a week, UPS sent three letters to Plaintiff. One letter was a written warning for Plaintiff's insubordination. One letter was a termination letter for Plaintiff's insubordination. One letter was a termination letter for dishonesty. As a result, Plaintiff filed a grievance and claimed that the discharge violated the Collective Bargaining Agreement (Agreement).

Plaintiff later claimed that Local 79's response to his grievance violated Article 51 Sections 1(1)-(2) of the Agreement. In November, Plaintiff attended a Southern Region Area Parcel Grievance Committee (SRAPGC) hearing regarding his grievance. The SRAPGC panel consisted of three Teamsters (by and through Local 79) and three UPS members.

Plaintiff now claims that the Teamsters failed to represent his interest in advocating to the panel, and failed to represent his interest on the panel. The SRAPGC panel upheld Plaintiff's discharge, reportedly for dishonesty.

In January, Local 79 requested an appeal on Plaintiff's behalf to the National Grievance Committee. Plaintiff received no additional information regarding the appeal, and now claims that other similarly situated white members of the Teamsters and Local 79 received more favorable treatment throughout their grievance processes.

Plaintiff pursued his claim through the EEOC, and received a right to sue letter in April, 1999.

Plaintiff further claims that the Teamsters and Local 79 violated Title VII of the Civil Rights Act of 1964 (42 U.S.C. Section 2000e et seq.) and the Florida Civil Rights Act (Florida Statutes Section 760.01 et. seq.) in their involvement and handling of his complaint.

Finally, Plaintiff asserts that the Teamsters and Local 79 denied him the same rights afforded white members to make and enforce contracts under 42 U.S.C. Section 1981.

Defendants Teamsters and Local 79 moves for summary judgment on all three counts of Plaintiff's complaint. Specifically, Defendants assert that there are no genuine issues of material fact regarding the following issues:

**Teamsters:**

A. Whether the Teamsters owed Plaintiff a duty a fair representation as the certified collective bargaining representative, and if so, whether it violated the duty when it rejected Plaintiff's appeal.

B. Whether Plaintiff properly filed suit in accordance with his EEOC right to sue letter; whether Plaintiff has presented a prima facie case of discrimination regarding Plaintiff's Civil Rights under Title VII of the Civil Rights Act of 1964, Florida Civil Rights Act of 1992, or 42 U.S.C. Section 1981.

**Local 79:**

 A. Whether Plaintiff's Count I is time-barred and fails to establish a prima facie case.

 B. Whether Plaintiff properly complained of discriminatory treatment by Local 79 to the EEOC or Florida Commission on Human Relations. (Plaintiff concedes to Summary Judgment in favor of the Defendant on this issue.)

 C. Whether Plaintiff has presented a prima facie case of discrimination under 42 U.S.C. Section 1981.

## III. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c) (2000). However, the moving party bears the burden of initially proving that no issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265, (1986). In *Celotex,* the Court held that rule 56(e) requires the non-moving party to go beyond the pleadings in establishing whether there are specific facts showing a genuine issue to be resolved at trial. *Id.* A genuine issue exists where the record, taken as a whole, contains evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court has the responsibility to examine the evidence in the record and determine whether genuine issues exist for trial. Therefore, if the evidence is not probative and the non-moving party fails to show that a genuine issue exists, summary judgment should be granted. *Id.* In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983). Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980)

## IV. DISCUSSION

**Teamsters:**

In its motion, Defendant Teamsters argues that Defendant is not Plaintiff's certified collective bargaining representative, and did not violate any duty to represent him when it rejected his appeal. Furthermore, Defendant alleges that Plaintiff failed to adhere to the limited scope of the EEOC's right to sue letter, and that Plaintiff has not established a prima facie case of discrimination. Defendant urges this Court to grant summary judgment in its favor on all counts of Plaintiff's complaint.

### A. Duty of Fair Representation

Defendant argues that it was not a signatory to the collective bargaining agreement, and Defendant is not Plaintiff's certified bargaining representative. Primarily, Defendant relies on the fact that Local 79 processed all of Plaintiff's grievances and appeals at the local level, not through the Teamsters. Defendant directs the Court's attention to the procedures outlined in the Agreement, and points out that Local 79 properly adhered to the written procedures. Defendant added that Plaintiff was given ample opportunity to speak at the SRAPGC hearing and explain his version of the events of October 5, 1998.

■ Defendant correctly relies on relevant case law to support its position that it was not a signatory to the contract and therefore, it owed no duty to Plaintiff. *Teamsters Local 30 v. Helms Express, Inc.*, 591 F.2d 211, 217 (3d Cir.1979), *cert. denied; Sine v. Teamsters Local 922*, 730 F.2d 964, 966 (4th Cir.1984). Further, Defendant contends, even if it was a signatory, the local union (Local 79 in this case) is responsible for administering the agreement. *Hammons v. Adams*, 783 F.2d 597, 604–605 (5th Cir.1986).

Defendant also properly asserts that the Teamsters organization is not responsible for the acts of its affiliated local unions, and does not owe an independent duty of fair representation to Plaintiff. *Gentry v. UPS*, CA No. 91–B–1739–S (N.D.Ala. 1993), *aff'd*, 71 F.3d 882 (11th Cir.1995), *cert. denied*, 519 U.S. 839, 117 S.Ct. 115, 136 L.Ed.2d 67 (1996); *Armstrong v. UPS*, CA No. M–99–028 (S.D.Tx.1999).

Plaintiff contends that the Teamsters organization is a party to the contract, and that Defendant Teamsters owed him an independent duty of fair representation because the Teamsters organization is referenced throughout the Agreement, and because the Teamsters National United Parcel Service Negotiating Committee (NNC) is just a "shell" for the Teamsters. Plaintiff argues that whether NNC is just another name for the Teamsters is a question of fact that should be decided by the fact finder. However, that is not the appropriate question before the Court. Even if the Teamsters and NNC are the same entity, it is clear from the language in the Agreement that Local 79 is responsible for administering it.

■ However, Plaintiff also argues that whether a national appeal is accepted is a function of the Teamsters and UPS. Plaintiff contends that this is proof that the Teamsters have a contractual obligation to his fair representation. Notably, the type of appeal that the Teamsters consider is only whether the content of the proceeding below (at the local level) involved an interpretation of the National Master Contract. In that case, the Teamsters would consider the interpretation of the pertinent language.

Plaintiff has identified a material factual dispute in this case, because it is possible that the Teamsters improperly denied his appeal, which was a function of the Teamsters and not Local 79, based on the SRAPGC's determination that Plaintiff was terminated for dishonesty. According to UPS's own letters, Plaintiff could have been terminated for dishonesty, or Plaintiff could have been terminated for insubordination. The facts regarding Plaintiff's back pay are ambiguous, and have a bearing on what basis the SRAPGC, and later, the Teamsters, considered his appeal. The characterization of Plaintiff's termination is relevant because if Plaintiff was terminated for insubordination, the appeal may or may not have been considered using the National Master Contract language, since Article 52, which contains the dishonesty provision, is not part of the National Master Contract.

A reasonable fact finder could find for the non-moving party in this case. To grant summary judgment, the Court must find that there is no genuine issue as to any material fact, considering all facts in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c) (2000). This case involves material factual disputes. The Court denies the Teamsters' Motion for Summary Judgment as to Count I of Plaintiff's Complaint.

## B. Civil Rights Claims

Plaintiff's Complaint alleges that the Teamsters' discriminatory handling of his complaint was motivated by race in violation of Title VII of the Civil Rights Act of

1964 and the Florida Civil Rights Act of 1992. As a result of the EPC's letter to Plaintiff informing him that it had no jurisdiction over his appeal, Plaintiff filed a charge against the Teamsters with the EEOC.

Defendant first contends that Plaintiff did not comply with the EEOC's right to sue letter because Plaintiff did not sue in conformity with his own allegations in the EEOC Complaint. Specifically, Defendant asserts that Plaintiff's EEOC complaint alleged that the Teamsters' "involvement in the handling of Plaintiff's grievance was motivated in whole or in part by Plaintiff's race," but in contrast, the charge filed with the EEOC alleges that the Teamsters discriminated against him because it failed to investigate the members of the grievance panel, not by its failure to "handle his grievance." In short, Defendant argues that Plaintiff did not meet the requirements under Title VII of the Civil Rights Act of 1964 or the Florida Civil Rights Act of 1992, which has a similar requirement.

Assuming that Plaintiff filed his suit in accordance with proper procedure, Defendant asserts that no members of the Teamsters was ever aware of Plaintiff's race. Defendant denies that any decisions were predicated by Plaintiff's race because the Teamsters organization was wholly unaware of Plaintiff's race.

■ Plaintiff opposes Defendant's assertion that the Teamsters organization was unaware of his race during his EPC complaint and appeal and cites an affidavit that indicates the Teamsters might have known his race. However, Plaintiff bears the burden of proving that an adverse action was racially motivated. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 518, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff also bears the burden of proving a prima facie case of discrimination under the *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ To prove a prima facie case of discrimination, Plaintiff must demonstrate that he is a member of a protected class and was treated in a disparate manner from the majority. *Teamsters v. United States,* 431 U.S. 324, 334 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The requirement presumes that the alleged discriminator was aware that the Plaintiff was a member of the protected class. *Geraci v. Moody–Tottrup, Int'l., Inc.,* 82 F.3d 578, 581 (3d Cir.1996). Plaintiff must prove that the Teamsters knew he was a member of a protected class. *Id.*

■ Plaintiff has shown a genuine issue of material fact regarding Count II of Plaintiff's complaint. The disputed issue is whether or not the Teamsters knew about Plaintiff's race. Accordingly, the Court denies the Motion for Summary Judgment as to Count II of Plaintiff's Complaint.

Finally, Defendant raises the same arguments regarding Plaintiff's 42 U.S.C. Section 1981 claim, which provides:

(a) Statement of equal rights. All persons within the jurisdiction of the United States shall have the same right in every State and Territory to **make and enforce contracts,** to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property **as is enjoyed by white citizens,** and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (emphasis added).

(b) "Make and enforce contracts" defined. For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and

the **enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.** (Emphasis added).

The same reasoning applies to Count III. Since there is a material factual dispute as to whether the Teamsters organization was aware of Plaintiff's race, and the dispute might have affected Plaintiff's appeal to the NNC, the Court denies the Motion for Summary Judgment.

**Local 79:**

### A. Time–Bar and Duty of Fair Representation

#### 1. Time–Bar

■ Count I of Plaintiff's Complaint alleges that Defendant Local 79 discriminated against Plaintiff, and breached its duty of fair representation when it processed Plaintiff's grievances. Count II of Plaintiff's Complaint alleges that Local 79 discriminated against him and violated Title VII and the Florida Civil Rights Act of 1992 when it mishandled Plaintiff's grievances. Count III of Plaintiff's complaint alleges that Local 79 intentionally provided him unsatisfactory representation in violation of 42 U.S.C. § 1981.

First, Defendant contends that Plaintiff's Complaint is time-barred, and fails to establish a prima facie case of discrimination.

Plaintiff raises a genuine issue of material fact regarding the basis of his termination. If Plaintiff's termination was clearly outside any interpretation of the National Master Agreement language, Plaintiff would have no claim. However, SRAPGC's terminology "sustained" and "denied", as applied to Article 7 and 52 respectively, is ambiguous because there is no indication whether it was the grievance or the termination that was "sustained" or "denied" under these Articles. If it was unequivocally the termination, Plaintiff's case would fail because the SRAPGC's de-

cision is final and binding. However, if "sustained" or "denied" pertained to the grievance, Plaintiff could still have reasonably thought his termination was for insubordination, not dishonesty. Additionally, Plaintiff's contention is supported by his conflicting correspondence from UPS and UPS's own management's deposition response regarding the real reason for his termination. If Plaintiff's termination was for insubordination, it may or may not have been interpreted under the National Master Agreement's language, and consequently, NNC might have considered his appeal.

Further, Defendant argues that the statute of limitations began to toll on November 11, 1998, when the termination was announced, and that Plaintiff only had 180 days to file suit. Plaintiff filed suit 237 days later, on July 7, 1999.

Contrary to Defendant's contention that the statute of limitations began to toll on November 11, 1998, Plaintiff had not exhausted all his internal union remedies at that time. Defendant asserts that the language of the SRAPGC's determination was clear that it terminated him based on Article 52, for dishonesty, and that Plaintiff was aware that he could not appeal the decision because it did not interpret any National Master Agreement language. However, given the ambiguities in the SRAPGC's terminology coupled with the conflicting UPS termination letters, it is reasonable that Plaintiff might have legitimately believed he could pursue an appeal.

■ Furthermore, unless it is a completely futile effort to seek further review, statutes of limitations are tolled while a Plaintiff exhausts internal appeals processes. *Robinson v. Central Brass Manufacturing Co.*, 987 F.2d 1235, 1244 (6th Cir. 1993). Here, the NNC could conceivably have accepted Plaintiff's appeal if his termination was based on insubordination

rather than dishonesty. If Plaintiff's termination was based on insubordination, Article 7 of the National Master Agreement would have been violated because UPS would have terminated Plaintiff for a non "cardinal" reason without proper notice. That type of decision may be reviewed by the NNC.

There is a genuine issue of material fact as to whether the SRAPGC's termination notice to Plaintiff was clearly for dishonesty, which would have prohibited any further appeals. Due to the conflicting information regarding Plaintiff's back pay, which should not have been paid to Plaintiff if his termination was truly for dishonesty, and the conflicting letters UPS sent the Plaintiff regarding the reason for his termination, this Court cannot find that Plaintiff had no basis to attempt his appeal. Since the Plaintiff's appeal effort was not completely futile, the statute of limitation was tolled while Plaintiff pursued the available internal remedies. This Court cannot say, as a matter of law, that no reasonable fact finder could find for the non-movant. Accordingly, the Court denies the Motion for Summary Judgment.

### 2. Duty of Fair Representation

Second, Plaintiff claims that Local 79 discriminated against him in its mishandling of Plaintiff's grievance. Plaintiff cites numerous ways the complaint could potentially have been handled better, but that is not dispositive as to whether Local 79 discriminated against him. Plaintiff claims that Local 79 never asserted his discrimination concerns at the termination hearings. According to Plaintiff, his representative was well aware of Plaintiff's suspicions that he was the victim of racial discrimination. There is evidence that Plaintiff had on several other occasions brought his racial discrimination concerns to management. Plaintiff spoke on his own behalf at the hearing to inform the panel of his racial discrimination concerns,

only to have his representative speak after him and essentially discredit Plaintiff's opinion.

To prove a prima facie case of discrimination, Plaintiff must demonstrate that he is a member of a protected class and was treated in a disparate manner from the majority. *Teamsters v. United States*, 431 U.S. 324, 334 n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). The requirement presumes that the alleged discriminator was aware that the Plaintiff was a member of the protected class. *Geraci v. Moody Tottrup, Int'l., Inc.*, 82 F.3d 578, 581 (3d Cir.1996).

Defendant correctly asserts that Plaintiff cannot prove a prima facie case of intentional discrimination primarily because Plaintiff cannot show that other similarly situated Caucasians were treated any differently, and because the Plaintiff has not asserted any claim for "pattern or practice." Plaintiff claims in his response to Defendant's Motion for Summary Judgment that even if he cannot prove a prima facie case of racial discrimination within the traditional framework, Plaintiff can provide evidence to support his claim of a breach of the duty of fair representation outside the framework. Plaintiff asserts that the National Labor Relations Board has found a breach of the duty of fair representation in cases where union action was based on racially discriminatory motivations. *Independent Metal Workers, Union Local 1 & 2, (Hughes Tool Company)*, 147 NLRB 1573, 56 LLRM 1289, 1964 WL 16284 (1964).

The Supreme Court has noted that the *McDonnell Douglas* framework is not necessarily applicable to every allegation of discrimination based on circumstantial evidence. Even if Plaintiff cannot establish a prima facie case of racial discrimination based on the traditional framework, the ultimate question is whether Local 79

mishandled Plaintiff's grievance based on any discrimination. Although Plaintiff claims Title VII and Florida Civil Rights Act violations, which traditionally use the *McDonnell Douglas* framework, Plaintiff's fundamental claim rests on his theory that Local 79 discriminated against him and mishandled his grievance. In this case, there are genuine issues of material fact as to whether or not racial discrimination was a factor in handling Plaintiff's grievance and consequently, whether Plaintiff received fair representation from Local 79. Therefore, the Court denies the Motion for Summary Judgment as to this issue.

Material factual disputes preclude the entry of summary judgment as to whether Plaintiff's claim is time-barred and whether Plaintiff received fair representation by Local 79. The Court denies the Motion for Summary Judgment as to both issues.

### B. Claims Under Title VII and Florida Civil Rights Act

In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff withdraws his Title VII claim and presumably his claim under the Florida Civil Rights Act. Although Plaintiff does not specifically state that he also withdraws his claim under the Florida Civil Rights Act, the burden is essentially the same under each.

Therefore, the Court grants the Motion for Summary Judgment in favor of Defendant as to these claims.

### C. Fair Representation Under 42 U.S.C. Section 1981

 To survive summary judgment, Plaintiff must show: 1) the employer breached the collective bargaining contract; 2) that the union violated is duty of fair representation; and 3) that there is some indication that the union's actions were motivated by race. *Walker v. Pepsi-Cola Bottling Co.,* et al., 2000 WL 1251906,

*8 (D.Del.2000), *citing Webb v. Merck & Co.,* 1999 WL 387122, *3 (E.D.Pa.1999), *citing York v. American Telephone & Telegraph,* 95 F.3d 948, 955–56 (10th Cir. 1996); *Babrocky v. Jewel Food Co.,* 773 F.2d 857 (7th Cir.1985).

In this case, Plaintiff withstands Defendant's Motion for Summary Judgment. In a summary judgment motion, the Court must consider the evidence in the light most favorable to the non-moving party. *Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir.1983).

Plaintiff contends that even Local 79 agrees that UPS violated the agreement with respect to Plaintiff. When considering the facts most favorably to the non-movant, Plaintiff has shown that Local 79 breached its duty of fair representation. Plaintiff has provided at least "some indication" that Local 79's actions were motivated by race.

Therefore, the Court denies Defendant's Motion for Summary Judgment on Count III of Plaintiff's Complaint. Accordingly, it is

**ORDERED** that Defendant Teamster's Motion for Summary Judgment on Counts I, II, and III (Dkt.23) is **denied.** As to Count I and II, Defendant Local 79's Motions for Summary Judgment (Dkt.20) is **denied,** and as to Count II, Defendant Local 79's Motion for Summary Judgment (Dkt.20) is **granted.**