NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3743
_____

TAMARA ANTHONY,

Appellant

v.

DUFF & PHELPS CORPORATION; DUFF & PHELPS, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-03918)
District Judge:  Honorable Paul S. Diamond
_____

Submitted Under Third Circuit LAR 34.1(a)
June 20, 2011

Before:  HARDIMAN and ALDISERT, *Circuit Judges*
and RESTANI [*] *Judge*.

(Filed:  June 22, 2011)

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

_____

[*]The Honorable Jane A. Restani, Judge of the United States Court of International
Trade, sitting by designation.

Tamara Anthony appeals the District Court's summary judgment on her Title VII claim for national origin discrimination. We will affirm, essentially for the reasons stated by the District Court in its careful and thorough opinion.

I

Because we write for the parties, we recount only the essential facts, and we do so in the light most favorable to Anthony.

Anthony worked as a real estate analyst at Duff & Phelps, LLC from September 2006 to June 2008. As a Russian emigrant, Anthony claimed that she was being singled out for unfair treatment by her co-workers and supervisors. Specifically, Anthony testified that one of her supervisors, Jay White, "constantly corrected" her pronunciation of English words and another supervisor, John Corbett, assigned her low-billable hour work "that nobody else seemed to want." In contrast, Anthony claims her direct supervisor, Paul Sipala, was a "fair and reasonable supervisor" who exhibited no obvious bias against persons of Russian origin.

In the spring of 2008, "as a result of the general economic downturn," Duff & Phelps, LLC "implemented Project Pearl, a nationwide reduction-in-force." The company directed Ross Prindle, the national manager of the real estate group, to terminate one analyst position from the Philadelphia office. At the time, two real estate analysts worked in Philadelphia: Anthony and an American-born college graduate, Robert

2

Wasenius. Prindle had not met either candidate. Accordingly, he relied on the company's "utilization data"—measuring employee productivity and efficiency—to determine which employee to fire. The data showed that "between January 1, 2007 and March 31, 2008, [Anthony's] overall utilization score was 10-15% lower per year than Wasenius's score."

Prindle contacted Corbett to determine whether the employees' utilization scores "grossly mischaracterized the overall quality of their respective work performance." Corbett was unaware, during his conversation with Prindle, that the company was planning to lay off workers. Believing that Prindle merely called to discuss the employees' annual performance reviews, Corbett noted the analysts' "good qualities and qualities that needed work." Corbett made no mention of either candidate's national origin. Following this conversation, Prindle selected Anthony for termination and she was officially notified of the company's decision on June 9, 2008.

Two months later, Anthony filed suit in the District Court for the Eastern District of Pennsylvania, alleging national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The District Court entered summary judgment against Anthony on August 12, 2010, holding that she could not make out a *prima facie* case of discrimination. This timely appeal followed.[1]

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.

II

We review the District Court's summary judgment *de novo*, and apply the same standard as the District Court. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).

The District Court found no "causal nexus" between Anthony's membership in a protected class and her termination. *Anthony v. Duff & Phelps Corp.*, 2010 U.S. Dist. LEXIS 83161, *18-19 (E.D. Pa. Aug. 12, 2010) (citing *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003)). The Court held that "it is counterintuitive to infer that [Prindle] discriminated [against Anthony]" based on her national origin, because there is no evidence that Prindle was aware of Anthony's nationality at the time of her termination. *Id.* at *16 (quoting *Geraci v. Moody-Tottrup, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996)).

Anthony argues that because Prindle's decision was based, in large part, on her supervisors' recommendations, a "causal nexus" exists between her supervisors' anti-Russian bias and Prindle's ultimate determination. *See Roebuck v. Drexel Univ.,* 852 F.2d 715, 727 (3d Cir. 1988) ("it plainly is permissible for a jury to conclude that an evaluation at any level, if based on discrimination, influenced the decisionmaking process").

The District Court rejected this argument, however, finding that Anthony failed to point to any evidence showing that her "supervisors (Corbett, Sipala, or White) . . .

4

influenced Prindle's decision based upon an anti-Russian bias." *Anthony*, 2010 U.S. Dist. LEXIS 83161, at *17. Apart from Anthony's allegations that Corbett assigned less desirable work to her than he did to her co-workers, no evidence in the record shows that Corbett was motivated by discriminatory animus, let alone that he allowed such animus to infect his recommendations to Prindle. Rather, Corbett testified that he did not recommend that Anthony be laid off, but rather spoke to Prindle about the employees' 2007 evaluations. In 2007, Anthony received an overall competency score of "proficient"—the second lowest possible rating.[2] Like Anthony's "utilization data," this score reflected Sipala's objective analysis of Anthony's performance. Thus, no evidence in the record supports Anthony's allegation that Corbett's recommendation to Prindle was tainted by discriminatory animus.

Nor is there evidence that White's alleged bias against persons of Russian origin influenced Prindle's decision to terminate Anthony. During his deposition, White claimed that Prindle never contacted him to discuss Anthony's performance. Nevertheless, Anthony argues that a reasonable jury might find that White was part of the decision making process, because Prindle claimed to speak to multiple "individuals," but only identified one person by name. We decline Anthony's invitation to assume that one

---

[2] Although Wasenius received an even lower score that year—"requires development"—Sipala explained that this score is given to all employees in their first year. In fact, Anthony received the same low rating during her first year at Duff & Phelps, LLC.

of the individuals with whom Prindle spoke was White. Such "unsupported assertions, speculation, and conclusory allegations are insufficient to withstand a motion for summary judgment." *Nelson v. DeVry, Inc.*, 2009 U.S. Dist. LEXIS 38161, *27-28 (E.D. Pa. Apr. 23, 2009). Thus, we find no "causal link" between White's alleged bias and Prindle's decision to terminate Anthony.

As the District Court found, the record contains no evidence that Anthony's termination was based on anything other than the "utilization data" and her overall competency score. Thus, the District Court did not err in holding that Anthony failed to establish a *prima facie* case of discrimination. Accordingly, we will affirm the District Court's summary judgment.[3]

---

[3] Because we hold that Anthony failed to make out a *prima facie* case of discrimination, we need not consider her assertion that the "economic" justification for her layoff was pretextual. Moreover, where a plaintiff fails to make out a *prima facie* case of discrimination under *McDonnell-Douglas*, "there is no basis to allow the plaintiff to proceed on a mixed motive theory." *Sulit v. Fed. Reserve Bank of Phil.*, 2009 U.S. Dist. LEXIS 77699, at *21 (E.D. Pa. Aug. 28, 2009).