**Cheryl SOLOMEN, Plaintiff,**

v.

**REDWOOD ADVISORY COMPANY, Defendant.**

**No. 00–CV–858.**

United States District Court, E.D. Pennsylvania.

Jan. 31, 2002.

Samuel A. Dion, Dion–Goldberger, Philadelphia, PA, for plaintiff.

Melissa E. Lea, Wolf, Block, Schorr & Solis–Cohen, David L. Goller, Philadelphia, PA, for defendant.

## EXPLANATION AND ORDER

ANITA B. BRODY, District Judge.

In this pregnancy discrimination case, plaintiff Cheryl Solomen ("Solomen") alleges that she was terminated from her job at defendant Redwood Advisory Company ("Redwood") due to her 1997 pregnancy. Solomen brings claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1) (1994), and the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*

### Factual Background [1]

In 1990, Solomen began working at Rouse & Associates, the company responsible for managing the retail shopping area at the Shops at Liberty Place. (*Solomen* at 18:4–19:7).[2] Solomen was supervised by Ricardo Dunston ("Dunston") and Kathy Adams ("Adams"). *See* Complaint at ¶ 13. Solomen gave birth to her first child in late 1992, took maternity leave and returned to work in January 1993. (*Solomen* at 22:4–23:16). While Solomen was on maternity leave, Dunston and Adams attempted to replace her with an unmarried individual. (*Solomen* at 200:14–201:23). In March 1993, Rouse & Associates lost its contract to manage the Shops at Liberty Place. (*Solomen* at 23:17–24:8). Management of the Shops was taken over by defendant Redwood, a company founded by Dunston. (*Solomen* at 23:20–24:1). All of the employees in the management office of Rouse & Associates were hired by Redwood in similar capacities, including Solomen. (*Solomen* at 24:20–25:6).

In early 1994, Solomen was promoted to office manager of the new Redwood office then being established at Philadelphia Airport. (*Solomen* at 36:9–38:17). During the spring or summer of 1996, Solomen was transferred back to the Redwood office at the Shops at Liberty Place, where she became the office manager. (*Solomen* at 49:18–51:22). In that capacity, she supervised the office staff, assisted the general manager in various tasks, and maintained files for slip and fall insurance claims against Redwood. (*Solomen* at 51:23–52:14, 56:4–67:9). She remained in this position until her termination on May 21, 1998.

In December 1996, Solomen announced to Dunston and Adams that she was pregnant. (*Solomen* at 77:9–13). She gave birth in June 1997 and took maternity leave for three months, returning to her job at Redwood in September 1997. (*Solomen* at 79:7–13). Dunston made several remarks to Solomen relating to her pregnancy in the period immediately preceding her maternity leave. Specifically, Solomen testified that he asked her "shouldn't you get out of here, you look like you're ready to pop," (*Solomen* at 31:1–31:3), and told her that, "I don't want you to wobble around anymore." (*Solomen* at 143:18–21). Dunston also gave Solomen the "silent treatment" while she was pregnant, asked other people to "get things for him" that she could have gotten, and ignored the fact that she was cleaning out a storage closet while seven months pregnant. (*Solomen* at 144:21–147:12). In October 1997, Solomen had a conversation with Dunston during which he told her she was making too much money and suggested that he might not be able to continue paying her current salary. (*Solomen* at

---

1. In deciding this motion for summary judgment, all reasonable inferences must be drawn and conflicting evidence resolved in favor of plaintiff Solomen, the nonmovant. *See Fuentes v. Perskie,* 32 F.3d 759, 762 n. 1 (3d Cir.1994).

2. Citations to deposition transcripts are made in the following format: (*[Deponent's name]* at [page number]:[line number]–[page number]:[line number]).

140:15–142:8). These statements, however, were unrelated to Solomen's pregnancy. (*Solomen* at 141:15–142:8). Dunston also inquired about her husband's business and said, "[You] don't expect to work here forever, do you?" (*Solomen* at 143:21).

At the time Solomen was terminated on May 21, 1998, her office duties included maintaining files of slip-and-fall insurance claims against Redwood. (*Solomen* at 51:23–52:14, 56:4–67:9). One of these claims was filed by Richard and Barbara Saad, Solomen's brother-in-law and sister. (*Solomen* at 82:5–104:12). Richard Saad injured himself in a slip-and-fall accident outside Liberty Place in January 1996. (*Richard Saad* at 25:18–27:16). In the office file on this lawsuit were several memoranda either addressed to or containing handwritten notes by Solomen. (*Solomen* at 82:5–104:12). Solomen and a few other Redwood employees met on May 15, 1998 to discuss several slip-and-fall cases, including the Saad lawsuit. (*Solomen* at 108:24–111:13). Solomen left the meeting at some point after discussion of the Saad case began, returning later to inform attorney David Brigham that she was related to Richard Saad. (*Solomen* at 112:5–11, 117:16–119:5). Brigham related this information to Dunston, who terminated Solomen's employment several days later for "failing to disclose that her brother-in-law, Richard Saad, was a claimant against defendant in a slip and fall case against defendant." Answer, ¶ 18.

**Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548,

91 L.Ed.2d 265 (1986). A court must determine "whether the evidence presents a sufficient [factual] disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the summary judgment stage, the Court must view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party. *See Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir.1996). However, when the nonmoving party "bears the burden of persuasion at trial, the moving party may meet its burden on summary judgment by showing that the non-moving party's evidence is insufficient to carry that burden." *Foulk v. Donjon Marine Co., Inc.*, 144 F.3d 252, 258 n. 5 (3d Cir.1998) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n. 2 (3d Cir.1998)).

**Legal Standard for Employment Discrimination Claims**

 Solomen has brought pregnancy discrimination claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a)(1), and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* I will confine my discussion to Title VII because the state law claim is analyzed in an identical manner. *See Siko v. Kassab, Archbold & O'Brien LLP*, 2000 WL 307247, at *4 n. 1 (E.D.Pa. March 24, 2000); *Pennsylvania State Police v. Pennsylvania Human Relations Commission*, 116 Pa.Cmwlth. 89, 542 A.2d 595, 599 (1988). Under Title VII, it is unlawful for an employer to discharge or otherwise discriminate against any individual on the basis of "race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1). In 1978, Congress amended Title VII by enacting the Pregnancy Discrimination Act ("PDA"), which provides in relevant part:

The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work.

42 U.S.C. § 2000e(k)(1994). "Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1312 (11th Cir. 1994). Therefore, a pregnancy discrimination case is evaluated under the same framework as other intentional sex discrimination cases under Title VII. *See Marzano v. Computer Science Corp., Inc.*, 91 F.3d 497, 506 (3d Cir.1996).

■■■ In proving a case of employment discrimination under both Title VII and the PHRA, a plaintiff may present either direct or indirect evidence of discrimination. *See Geraci v. Moody–Tottrup, Intn., Inc.*, 82 F.3d 578, 581 (3d Cir.1996). However, direct evidence of discrimination is highly unusual, so indirect evidence is more commonly utilized to support claims of intentional employment discrimination. *See id.* A plaintiff introducing indirect evidence can proceed under either a "mixed motive" or "pretext" theory, depending upon the type of evidence she produces. *See Hook v. Ernst & Young*, 28 F.3d 366, 374 (3d Cir.1994). However, "[a]bsent evidence that could 'fairly be said to directly reflect' the alleged unlawful basis, the case should be treated as a pretext case." *Id.* (*citing Griffiths v. CIGNA Corp.*, 988 F.2d 457, 470 (3d Cir.1993)). Plaintiff's evidence indicates that she is

asserting a pretext claim and does not directly reflect the alleged unlawful basis, and therefore I will analyze it as a pretext case.

Pretext cases are examined under a burden-shifting framework developed by the Supreme Court, known as the *McDonnell Douglas* test. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Courts apply this method by "presum[ing] that, once the plaintiff has shown the [elements of the prima facie case], unlawful discrimination was the most likely reason for the adverse personnel action." *See id.* At this point, the burden of production shifts to the employer to provide a legitimate nondiscriminatory reason for the adverse employment decision. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Simpson v. Kay Jewelers, Division of Sterling, Inc.*, 142 F.3d 639, 644 n. 5 (3d Cir.1998). If the employer carries this "relatively light burden," the burden of production rebounds to the plaintiff, who must then make a "substantial showing that [defendant's] explanation was false." *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 144, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994).

At the first stage of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of employment discrimination. *See Hicks*, 509 U.S. at 506, 113 S.Ct. 2742; *Simpson*, 142 F.3d at 644 n. 5. The prima facie test for discriminatory discharge requires plaintiff to demonstrate the existence of four elements: (1) she is a member of a protected class, (2) she was qualified for the position, (3) she was discharged, and (4) after plaintiff's termination, the employer had a continued need for someone to perform the same work. *See McDonnell Douglas*, 411 U.S.

at 802, 93 S.Ct. 1817; *Pivirotto v. Innovative Systems, Inc.,* 191 F.3d 344, 352 (3d Cir.1999); *Marzano,* 91 F.3d at 503. However, the Third Circuit has cautioned that the elements of the prima facie case "must not be applied woodenly, but must rather be tailored flexibly to fit the circumstances of each type of illegal discrimination." *Geraci,* 82 F.3d at 581 (*citing McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. 1817).

The Third Circuit has noted that pregnancy discrimination claims differ from other types of unlawful discrimination. *Geraci,* 82 F.3d at 581. The *Geraci* court discussed the fact that "[p]regnancy, of course, is different [from other protected personal attributes] in that its obviousness varies, both temporally and as between different affected individuals." *Id.* As a result, the Third Circuit found grounds to treat pregnancy discrimination cases differently from the "vast majority of discrimination cases." *Id.* Where the employee's pregnancy was at an early stage, and not necessarily evident to the employer, the *Geraci* court refused to presume that the employer knew of the pregnancy. *See id.* Therefore, it added the "critical element" of knowledge by the employer to the prima facie case of pregnancy discrimination. *Geraci,* 82 F.3d at 581. The Third Circuit justified this addition to the prima facie case by explaining that, in this situation, it "no longer makes sense" to presume discrimination solely from the facts alleged in the standard prima facie case. *See id.*

Pregnancy also differs from most other protected personal attributes in that it is not immutable. While some effects of pregnancy linger beyond the act of giving birth, at some point the female employee is no longer "affected by pregnancy, childbirth, or related medical conditions," for purposes of the PDA. 42 U.S.C. § 2000e(k). Such an understanding is implicit in the opinions of several federal courts that have denied protection under the PDA to plaintiffs based upon their status as mothers with young children. *See Piantanida v. Wyman Center, Inc.,* 116 F.3d 340, 342 (8th Cir.1997) (finding that plaintiff who admitted that her claim was based not on pregnancy or maternity leave but on status as new parent did not assert a cognizable claim under the PDA); *Piraino v. International Orientation Resources, Inc.,* 84 F.3d 270, 274 (7th Cir. 1996) (distinguishing claim of plaintiff on maternity leave from unprotected claims by mothers with young children).

In many pregnancy discrimination claims, concerns about the plaintiff's membership in the protected class do not arise because the employee obviously suffered the adverse employment action during pregnancy, maternity leave, or shortly after returning to work. *See In re Carnegie Center Associates,* 129 F.3d 290 (3d Cir. 1997) (plaintiff's position eliminated during maternity leave); *Piantanida,* 116 F.3d 340 (plaintiff was demoted during maternity leave); *Piraino,* 84 F.3d 270 (plaintiff told that she had "voluntarily quit" by taking maternity leave and defendant subsequently failed to rehire her); *Marzano,* 91 F.3d 497 (plaintiff's position eliminated during maternity leave); *Geraci,* 82 F.3d 578 (plaintiff fired within one month of discovering that she was pregnant); *Newman v. Deer Path Inn,* 1999 WL 1129105 (N.D.Ill. Nov. 7, 1999) (plaintiff fired approximately two weeks after miscarriage); *Jacobson v. Regent Assisted Living,* 1999 WL 373790 (harassment began during maternity leave and plaintiff was terminated two and a half months after returning to work full-time); *Shafrir v. Association of Reform Zionists of America,* 998 F.Supp. 355 (S.D.N.Y.1998) (plaintiff terminated during maternity leave). Where the employee is pregnant or on maternity leave at

the time the adverse employment action occurs, her status as a member of the protected class is evident and the traditional prima facie case is appropriate.

When the employee is not pregnant at or around the time that she suffers the alleged adverse employment action, her membership in the protected class is less clear. In this situation, at least one court has found that "in order to make a prima facie showing of discrimination on her theory of relief, plaintiff must do more than show she was, past tense, pregnant." *Brinkman v. State Dept. of Corrections,* 863 F.Supp. 1479, 1486 (D.Kan.1994) (plaintiff terminated approximately one year after giving birth did not make out prima facie case). Such a limitation is necessary to ensure that pregnancy discrimination claims under Title VII are brought by the individuals who can reasonably claim to be "affected by pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). Therefore, pursuant to the Third Circuit's instruction that the prima facie case must be flexibly tailored to the particular circumstances of each type of illegal discrimination, *Geraci,* 82 F.3d at 581, a plaintiff who was not pregnant at or near the time of the adverse employment action has some additional burden in making out a prima facie case. Such a plaintiff must demonstrate at the prima facie stage, by introducing evidence sufficient to allow the case to go to a jury, that she was "affected by pregnancy, childbirth or related medical conditions" at the time of the adverse employment action. *See Geraci,* 82 F.3d at 581.

**Analysis**

■■■ In this case, plaintiff Solomen gave birth in June 1997 and took maternity leave for three months, returning to her job at Redwood in September 1997. Solomen was terminated from her job at Redwood on May 21, 1998, more than eleven months after giving birth. As Solomen was not pregnant at or near the time she was terminated, she must present some evidence that she was still "affected by pregnancy, childbirth or related medical conditions" at the time she was terminated. Such a showing might consist of evidence that harassment or discriminatory statements by plaintiff's supervisors began during her pregnancy or maternity leave and continued with some regularity until the adverse employment action occurred. *See Piraino,* 84 F.3d 270. A plaintiff could also adduce evidence that she developed a medical condition during pregnancy that continued to cause problems with her job until the adverse employment action occurred. *See Brinkman,* 863 F.Supp. 1479. Essentially, a plaintiff who was not pregnant at or near the time she was terminated must demonstrate that the effects of her pregnancy continued to exist at the time she was terminated, either in actual fact or in the thoughts and actions of those responsible for firing her.

Applying this legal standard to the facts of Solomen's case, she has not met her burden of making out a prima facie case. Solomen's strongest allegation is that Dunston, the president of Redwood, harbored resentment toward her that stemmed from her pregnancy and was the true cause of her termination. As evidence of this negative attitude, Solomen identifies several statements that Dunston made to her before she went on maternity leave. Specifically, she claims that he asked her "shouldn't you get out of here, you look like you're ready to pop," (*Solomen* at 31:1–31:3), and told her that, "I don't want you to wobble around anymore." (*Solomen* at 143:18–21). These statements are reprehensible if true and would tend to demonstrate Dunston's discriminatory intent if uttered in close proximity to his decision to fire Solomen.

However, the statements were made nearly one year before Dunston fired Solemen and she had adduced no evidence of any similar statements during the eight and a half months she worked at Redwood after returning from maternity leave. Indeed, Solomen identifies very little evidence of improper behavior by Dunston relating to her pregnancy after she returned from maternity leave. She alleges that he gave her the "silent treatment," along with several other female employees. While such evidence might be probative of more general sex discrimination, it does not support Solomen's claim of pregnancy discrimination. Finally, Solomen suggests that comments Dunston made to her at a meeting in October 1997, concerning her salary, her husband's business, and the fact that she couldn't expect to work at Redwood forever, demonstrate that Dunston still harbored resentment toward her due to her recent pregnancy. However, in her deposition, Solomen admitted that these statements had nothing to do with her pregnancy. (*Solomen,* 141:15–142:8). The evidence offered by Solomen to substantiate her claim of pregnancy discrimination fails to demonstrate that her pregnancy affected Dunston's attitude or treatment of her during the eleven months that passed between her childbirth and her termination. Solomen cannot establish that she was affected by the pregnancy at or near the time of her termination and therefore, she fails to make out a prima facie case of pregnancy discrimination.

All of Solomen's remaining arguments go to the issue of pretext. Given my conclusion that she has failed to make out a prima facie case, I will not address them. The motion for summary judgment will be granted.

### ORDER

**AND NOW,** this day of January, 2002, it is **ORDERED** that Defendant's Motion for Summary Judgment (Docket Entry # 23) is **GRANTED**.