**Gensey v. Taras DMD**

*George S. Kounoupis,* for plaintiff.
*Patrick J. Reilly,* for defendants.

JOHNSON, *J.,* May 21, 2010—

## I. INTRODUCTION

Before the court for consideration is plaintiff's complaint filed on April 17, 2009. Plaintiff's complaint alleges statutory causes of action under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, et seq. A non-jury trial was held on April 27 through 30, 2010.

## II. FINDINGS OF FACT

(1) Individual defendant Michael Taras DMD (defendant Taras) at all relevant times was an officer and owner of Michael Taras DMD LLC (defendant LLC).

(2) Plaintiff Christine Gensey was employed by the defendants as an office manager from on or about January 2005 until October 3, 2007.

(3) In December of 2006, Gensey informed defendant Taras she was pregnant.

(4) From the date of Gensey's hiring to 2007, the defendants' practice grew from 14 patients to over 7,000 patients due, in part, to the loyal and diligent efforts of Gensey who, at the start was the only employee.

(5) From the start of her employment on January of 2005 to her maternity leave on September 12, 2007, there was not a single writing or document reflecting any discipline or criticism of Gensey whatsoever.

(6) On or about September 12, 2007, one day before the day she was scheduled to give birth, Gensey went on maternity leave.

(7) Gensey gave birth on September 13, 2007.

(8) Gensey took all steps to minimize the impact of this maternity leave including setting up a computer to work from home; being flexible to shortening her maternity leave and to working with her daughter at the office; and searching to find ways to put her newborn daughter in daycare at the earliest.

(9) During Gensey's maternity leave, defendant Taras threatened and harassed Gensey to return immediately and asserted that she would henceforth be "unavailable" and no longer at his "beck and call." He stated that Gensey should put her newborn "with a sitter" and return to work.

(10) On October 3, 2007, less than three weeks after Gensey went on maternity leave, Gensey was terminated by the defendants.

(11) The real reason for Gensey's termination was Gensey's pregnancy that necessitated her maternity leave and due to the perception by the defendants that Gensey, as a female caregiver of a young child, would be less available and dedicated to the dental practice than she had been previously.

(12) Gensey exhausted her administrative remedies by filing a complaint and amended complaint with the Pennsylvania Human Relations Commission (PHRC) within 180 days of the termination and by commencing this action more than one year after the initial filing with the PHRC.

(13) The court finds the testimony of Gensey, Ashley Arrecco and Janelle Arthur completely credible.

(14) The court finds the testimony of defendant Taras, Kimberly David, Mariann George and Jennifer Ruff completely not credible.

(15) Defendant Taras made comments evidencing discriminatory animus to pregnancy.

(16) Defendants' termination of Gensey was motivated in whole or in part by Gensey's pregnancy leave.

(17) Gensey had been, right up to her pregnancy leave, delegated significant authority and trust, including with regard to an over two million dollar real estate construction project involving the defendants' new office.

(18) Defendant Taras is not credible about having to take Gensey's keys and banning her from the workplace because of disruption into an investigation into insurance claims.

(19) The defendants did not contact Gensey or schedule Gensey for work at any time after they took her keys and sent her home on October 3, 2007.

(20) Defendant Taras is not credible when he says he concluded that Gensey quit based on statements from other staff members.

(21) The defendants never called Gensey to inquire as to why she allegedly quit.

(22) Gensey did not quit, either on October 3, 2007, or at any other time thereafter.

(23) The defendants communicated to Gensey that "she had quit" by letter on or about October 10, 2007, which was a false and pretextual assertion.

(24) Gensey immediately wrote back to defendant Taras on October 12, 2007, stating that at no time did she quit.

(25) The defendants provided no credible reason to believe that Gensey abandoned her job or quit either on October 3, 2007 or at any time thereafter.

(26) Gensey earned $32,578 in 2007 up to the time of her termination by the defendants.

(27) Gensey earned $12,314 in 2008, $26,295 in 2009 and $8,596 in 2010, all of which goes toward mitigation of damages.

(28) The wages Gensey has lost from the time of her termination until the final date of this trial, April 30, 2010, is $72,457. Legal interest at six percent per annum from April 17, 2009, the date the complaint was filed, to April 30, 2010, is $4,347. This brings the total lost wages plus legal interest to the date of trial to $76,804.

## III. CONCLUSIONS OF LAW

### A. *Count I: Plaintiff v. Michael Taras DMD LLC: Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.*

(1) Defendant LLC is an "employer" subject to the Pennsylvania Human Relations Act (PHRA), 43 Pa.C.S. §951 et seq.

(2) Gensey has exhausted her administrative remedies by first filing complaints with the PHRC within 180 days of her termination, and this action was filed more than a year after the initial PHRC filing.

(3) The PHRA itself prohibits pregnancy discrimination and the PHRA is read in pari materia with title VII's Pregnancy Discrimination Act 42 U.S.C. §2000e et seq. (PDA).

(4) A plaintiff alleging pregnancy discrimination based on a plaintiff's status as a new mother with young children "must demonstrate at the prima facie stage, by introducing evidence sufficient to allow the case to go to a jury, that she was 'affected by pregnancy, childbirth or related medical conditions' at the time of the adverse employment action." *Solomen v. Redwood Advisory Company,* 183 F. Supp.2d 748, 753 (E.D. Pa. 2002).

(5) Discrimination on the basis of pregnancy does not automatically cease once a baby is born and, where a plaintiff is on maternity leave at the time the alleged discrimination takes place, "her status as a member of the protected class is evident." *Id.,* 183 F. Supp.2d at 753-54.

(6) To establish a prima facie case of pregnancy discrimination, a plaintiff must demonstrate the existence of four elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) after plaintiff's termination, the employer had a continued need for someone to perform the same work. *Id.*

(7) Once the plaintiff establishes a prima facie case, a presumption of discrimination is raised and it is the employer's burden to establish a legitimate, nondiscriminatory reason for the adverse employment action. See *Drew v. PHRA,* 688 A.2d 274 (Pa. Commw. 1997).

(8) Gensey was on maternity leave and was a member of the protected class at the time of her termination.

(9) Gensey established a prima facie case of pregnancy discrimination.

(10) The defendant LLC produced no legitimate, nondiscriminatory motive for terminating Gensey while on maternity leave, as defendant Taras denied terminating Gensey at all, testimony that the court did not find credible.

(11) Based on the evidence presented, Gensey proved, by a preponderance of the evidence, that her termination was motivated by pregnancy discrimination, and thus, defendant LLC violated the PHRA.

(12) By terminating Gensey, defendant LLC discriminated against Gensey on the basis of her being a mother who needed to take care of a newborn child in violation of the PHRA

(13) Gensey has suffered back-pay losses, for which she may recover, under the PHRA.

(14) Gensey's back-pay loss damages are to be computed from her last day of paid work on October 9, 2007 to the date of trial.

(15) The defendants bear the burden of proving, by a preponderance of the evidence that Gensey failed to mitigate her damages. See *Willever v. Sovereign Bank,* 42 D.&C.4th 562 (Northamp. Cty. 1998).

(16) The defendants have not met their burden.

(17) Gensey, as prevailing party, is entitled to her attorney's fees and costs under the PHRA. 43 P.S. §959(f.1).

B. *Count II: Plaintiff v. Michael Taras DMD LLC: Retaliation Under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.*

(18) Gensey failed to prove that the defendants engaged in unlawful retaliatory practices that constitute a violation of 43 Pa.C.S. §951 et seq. of the PHRA.

(19) To establish that a discharge was retaliatory, a plaintiff must show that (1) she engaged in a protected activity; (2) she was discharged subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the discharge. *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 468 (3d Cir. 1993).

(20) Protected activity, upon which a plaintiff may base a claim of retaliation, includes opposition to a practice made unlawful by the PHRC or participation in a PHRC investigation, proceeding or hearing by making a charge, testifying or otherwise assisting. *Mroczek v.*

*Bethlehem Steel Corp.,* 126 F. Supp.2d 379 (E.D. Pa. 2001).

(21) "The lodging of generalized complaints, bereft of any mention of discrimination of any kind, falls well outside the scope of protected activity under title VII, the ADEA and the PHRA." *Klimczak v. Shoe Show Companies,* 420 F. Supp.2d 376, 388 (M.D. Pa. 2005).

(22) "The absence of any evidence indicating that a decision-maker working for the employer had knowledge of a plaintiff's protected activity may provide a basis to conclude that no causal link exists." *Id.*

(23) Based on the testimony and evidence presented, the court must conclude that there was no retaliation.

C. *Count III: Plaintiff v. Michael Taras DMD: Aiding and Abetting Under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.*

(24) Defendant Taras is a supervisor for purposes of "aiding and abetting liability" under the PHRA, 43 Pa.C.S. §955.

(25) Defendant Taras "aided and abetted" the discriminatory practices of defendant LLC against Gensey

## III. DISCUSSION

### A. *Credibility of the Parties Generally*

The content, consistency and reasonableness of Gensey's testimony, together with her very clear, direct

and honest manner of testifying, make her very credible. She is as credible as any witness this court has seen.

The content, inconsistency and unreasonableness of defendant Taras' testimony, along with his manner of testifying, make his testimony completely not credible to this court.

Defendant Taras made unreasonable statements that any employee could take off any time for any length of time whatsoever, which is not a practice that any business could survive.

Additionally, all of the matters that defendant Taras testified to about sexual comments by Gensey, her wearing of a particular t-shirt, sending photographs of herself to other employees, etc. are not even relevant to this case, but are only meant by defendant Taras to cast Gensey in a bad light which, had Gensey been able to establish a protected activity, would likely constitute retaliatory action, but at the very least it further harmed the credibility of defendant Taras.

B. *Count I: Plaintiff v. Michael Taras DMD LLC:*
*Pennsylvania Human Relations Act,*
*43 Pa. C.S. §951 et seq.*

According to his testimony, on October 3, 2007, defendant Taras told Gensey that he needed a week to think about and look at some issues, but that he wanted her keys, she should leave her belongings at the office and he would call her in a week. However, a week later he did not call her. Rather, on or about October 10, 2007, when two of his other employees told him that Gensey had called requesting her personal belongings, he con-

cluded that Gensey, his valued employee who had been with the defendants since the beginning of his business, had quit. He did not ever talk to her directly about her "quitting." He never received any communication from her in any way, whether oral or written, indicating that she had quit. However, he just concluded that she quit, without further question, in spite of the fact that as he himself stated, she was a critical employee to him for the entire length of time that he had been in business.

Moreover, defendant Taras immediately wrote a letter to Gensey to confirm that she had quit and sending her paycheck. Gensey, in turn, promptly sent defendant Taras a response letter indicating that she had not quit. Yet he failed to respond to her letter. If terminating Gensey was not the defendants' true intention, then one wonders why defendant Taras did not immediately contact Gensey and give her job back.

Additionally, defendant Taras slipped in answering questions to the court when he indicated that he did not have much experience in "firing" people then caught himself and indicated that was just a slip of the tongue. However, firing Gensey is exactly what he did on October 3, 2007, in spite of his thinly veiled attempt to cover that up by sending Gensey the letter confirming that she had "quit." It is clear to the court that, although defendant Taras never used the words "fired" or "terminated," he did, in fact, terminate Gensey. Gensey clearly fell within the protected class contemplated by the PHRA when she was terminated while on maternity leave, approximately three weeks after giving birth. The defendants terminated Gensey in such a close proximity of time to

the birth of her child that pregnancy discrimination is reasonably found to have existed here.

Therefore, based on the lack of credibility of defendant Taras' testimony, and the completely credible testimony of Gensey, it is clear to the court that the defendant LLC is liable, under Count I of the complaint, for pregnancy based discrimination under the PHRA.

### C. *Count II: Plaintiff v. Michael Taras DMD LLC: Retaliation Under The Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.*

In spite of the fact that the court found Gensey credible, she failed to support her claim for retaliation in this matter because she presented no evidence of retaliation. The Court is cognizant that there are no talismanic words that must be utilized to put an employer on notice of a plaintiff's discrimination allegation and thereby creating a protected activity under the PHRA. In fact, the court believes that, on October 3, 2007, Gensey asked defendant Taras if the reason she was being asked to turn in her keys and leave the premises was because she had just had her child. However, this general question does not rise to the level of being a protected activity, as it could not have put defendant Taras on notice of Gensey's allegation of pregnancy discrimination. Therefore, as there was no protected activity, Gensey's termination was not an adverse employment action that would fall under the category of being retaliatory.

Gensey's counsel stated that Gensey's application for unemployment compensation listed the reason for the termination as being Gensey's pregnancy, thereby putting

defendant Taras on notice of her allegation of pregnancy discrimination and creating a protected activity. However, such statement by counsel is not evidence. Counsel failed to elicit said testimony regarding the unemployment compensation application from Gensey. Additionally, he did not put said application into evidence. Therefore, when defendant Taras made derogatory comments about Gensey in his response to the unemployment compensation application, these statements could not be considered retaliatory, as there was no protected act in evidence against which he could have been retaliating.

The only protected activity in evidence in this case is Gensey's filing of the PHRC complaint. However, the PHRC complaint states that the alleged retaliatory activity began prior to Gensey's filing. In other words, those acts were not subsequent to or contemporaneous with her engaging in the only protected activity in evidence. Clearly, prior acts cannot be found to be in retaliation for a subsequent protected activity. Accordingly, Gensey has failed to produce evidence sufficient to support a claim for retaliation under the PHRA and the Count II must fail.

D. *Count III: Plaintiff v. Michael Taras DMD: Aiding and Abetting Under The Pennsylvania Human Relations Act, 43 Pa.C.S. §951 et seq.*

Defendant Taras, acting as Gensey's supervisor and as a representative of the defendant LLC, terminated her because she was not available to him as much as she had been previously due to her recently giving birth to her infant and he did not want to have to deal with that. He

relied on her heavily and expected her to do whatever he needed whenever he needed it. This is proven by the fact that he entrusted the work on his new office building entirely to her, while at the same time expecting her to run every aspect of his office.

Therefore, based on the court's finding that defendant LLC is liable for pregnancy discrimination, it is equally clear to the court that defendant Taras, as Gensey's supervisor, is liable under Count III of the complaint for aiding and abetting the pregnancy based discrimination.

## IV. CONCLUSION

For the reasons set forth above, the court finds Gensey has sustained claims under Counts I and III of her complaint for discrimination and aiding and abetting. Therefore, verdict is entered in favor of plaintiff, Christine Gensey, and against the defendants, Michael Taras DMD LLC and Michael Taras DMD, in the amount of $76,804, plus reasonable attorney's fees and costs.

## ORDER

And now, May 21, 2010, upon consideration of plaintiff's complaint and after non-jury trial on April 27 through 30, 2010, and for the reasons set forth in the attached opinion;

It is ordered that verdict is entered in favor of plaintiff, Christine Gensey, and against the defendants, Michael Taras DMD LLC and Michael Taras DMD, in the amount of $76,804, plus costs and reasonable attorney's fees. A

hearing to determine the amount of said attorney's fees shall be held on June 21, 2010 at 9:30 a.m. in Courtroom 5B of the Lehigh County Courthouse. The plaintiff shall serve the defendant with an itemized statement of said attorney's fees on or before June 9, 2010.