# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JULIA MCGLOTHLIN, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: N20C-08-186 FWW |
| | ) | |
| v. | ) | |
| | ) | |
| PETRUNICH ORAL & | ) | |
| MAXILLOFACIAL SURGERY, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: May 5, 2022
Decided: July 15, 2022

*Upon Defendant Petrunich Oral & Maxillofacial Surgery's Motion for Summary Judgment,*

**GRANTED in part and DENIED in part.**

**<u>MEMORANDUM OPINION</u>**

Michele D. Allen, Esquire, Emily A. Biffen, Esquire, ALLEN & ASSOCIATES, 4250 Lancaster Pike, Suite 230, Wilmington, DE 19805, Attorneys for Plaintiff Julia McGlothlin.

Daniel C. Herr, Esquire, LAW OFFICE OF DANIEL C. HERR LLC, 1225 N. King Street, Suite 1000, Wilmington, DE 19801, Attorney for Defendant Petrunich Oral & Maxillofacial Surgery.

**WHARTON, J.**

# I. INTRODUCTION

Plaintiff Julia McGlothlin ("McGlothlin") brings this action against her former employer Defendant Petrunich Oral & Maxillofacial Surgery ("Petrunich"). In her Complaint, she alleges that Petrunich discriminated against her because of her pregnancy and family responsibilities. In particular, the Complaint alleges: (1) sex and pregnancy discrimination in violation of the Delaware Discrimination in Employment Act ("DDEA")[1] (Count I); (2) violations of the Delaware Family Responsibilities Act ("DFRA")[2] (Count II); (3) violation of the Delaware Persons with Disabilities in Employment Protection Act ("DPDEPA")[3] (Count III); and failure to accommodate in violation of DPDEPA[4] (Count IV).[5] McGlothlin has agreed to dismiss a fifth count alleging a violation of the covenant of good faith and fair dealing.[6]

Before the Court is Petrunich's Motion for Summary Judgment, McGlothlin's Answer in Opposition and Petrunich's Reply. For the reasons set forth below,

---

[1] 19 *Del. C.* § 710, *et seq*.
[2] 19 *Del. C.* § 711.
[3] 19 *Del. C.* § 720, *et. seq.*
[4] *Id.*
[5] Compl., D.I. 1.
[6] *See,* Def.'s Mot. Summ. J. ("Plaintiff has agreed to dismiss her Count V with prejudice, and a stipulation to this effect will be presented to the Court for its consideration." D.I. 48; Pl.'s Ans. Br., at 1, n.1 ("Plaintiff agrees to dismiss Count III [sic] of her Complaint.), D.I. 53.

McGlothlin's Motion for Summary Judgment is **GRANTED in part and DENIED in part**.

## II.    FACTS AND PROCEDURAL HISTORY

Petrunich is a dental practice in Newark Delaware, solely owned by Dr. Raymond Petrunich (Dr. Petrunich").[7]   The practice employs four to five staff members.[8]  Dr. Petrunich hired McGlothlin in 2012 as a Surgical Assistant.  During her seven years of employment, McGlothlin assisted Dr. Petrunich in about 95% of his surgeries.[9]

McGlothlin discovered she was pregnant in or around November 2018.[10]  She then met with Dr. Petrunich to discuss her work schedule and associated accommodations.[11]  Both agreed that McGlothlin would remain in her current position and work as much as possible until her June 21, 2019 due date.[12]  Dr. Petrunich agreed to six weeks of maternity leave.[13]

Prior to becoming pregnant, McGlothlin testified at her deposition that she did not have any issues missing work.[14]  Petrunich presents text messages allegedly

---

[7] Pl.'s Ans. Br. at 2, D.I. 53.
[8] Def.'s Op. Br., at 4, D.I. 49.
[9] Pl.'s Ans. Br., at 2, D.I. 53.
[10] Compl.¶ 13, D.I. 1.
[11] Pl.'s Ans. Br., at 3, D.I. 53.
[12] *Id.*
[13] *Id.*
[14] Def.'s Op. Br., at 7, D.I. 49.

depicting multiple instances where McGlothlin did have pre-pregnancy tardiness issues.[15] Further, Petrunich contends that McGlothlin had attendance issues after becoming pregnant when she was late or absent with little to no notice.[16] McGlothlin claims she made reasonable accommodation requests to Dr. Petrunich to stop taking x-rays, to receive time off to attend doctor's appointments, and to use the restroom more frequently.[17] Petrunich denies receiving such requests.[18]

On June 4, 2019, McGlothlin began her maternity leave following a conversation between McGlothlin and Dr. Petrunich.[19] Petrunich alleges McGlothlin was "visibly upset" and when asked "when would you prefer to … take your leave?" McGlothlin replied "I want to do it right now."[20] McGlothlin stated the foregoing conversation did occur, however, she felt that based on Dr. Petrunich's body language that he wanted her to leave that day.[21]

On July 3, 2019, during McGlothlin's maternity leave, Petrunich terminated her employment.[22] Petrunich alleges the termination was due to issues with "performance, multiple days missed on short or little notice, and just [McGlothlin's]

[15] *Id., at* 5-6.
[16] *Id., at* 10.
[17] Pl.'s Ans. Br., at 4-5, D.I. 53.
[18] Def.'s Op. Br., at 12, D.I. 49.
[19] Pl.'s Ans. Br., at 5, D.I. 53.
[20] Def.'s Op. Br., at 13, D.I. 49.
[21] *Id., at* 14.
[22] *Id.,* at 16.

unreliability."[23]  McGlothlin claims she was in good standing at the time of her termination, having never formally been disciplined during seven years of employment.[24]  Additionally, McGlothlin alleges that Petrunich manufactured performance issues as the basis for her termination.[25]  Petrunich's most recent employee evaluation of McGlothlin does not state any performance issues.[26]

Discovery now is complete.  Petrunich moves for summary judgment on all four remaining counts.  McGlothlin opposes.

### III.  THE PARTIES' CONTENTIONS

Petrunich contends McGlothlin's sex/pregnancy accommodation and discrimination claim (Count I) fails because no accommodations were requested and McGlothlin has not established a sufficient record to take her discrimination claims to trial.[27]  Petrunich argues that under the three-pronged *McDonnell Douglas*[28] burden shifting framework employed in discrimination cases, McGlothin has failed to rebut Petrunich's legitimate, non-discriminatory reasons for terminating her.[29] Under the same *McDonnell Douglas* analysis and for the same reason, Petrunich argues that McGlothlin's DFRA (Count II) claim fails.

---

[23] *Id., at* 16.
[24] Pl.'s Ans. Br., at 6-7, D.I. 53.
[25] *Id.,* at 7, D.I. 53.
[26] *Id., at* 8.
[27] Def.'s Op. Br., at 20-23, D.I. 49.
[28] *McDonnell Douglas v. Greene,* 411 U.S. 792 (1973).
[29] Def.'s Op. Br., at 23-26, D.I. 49.

Turning to McGlothlin's disability discrimination claims (Counts III and IV), Petrunich disputes that she suffered an adverse employment action because of her pregnancy related disabilities incurred as a result of her giving birth through a cesarean section. Petrunich argues this claim suffers from a complete lack of proof because disability-related claims have no merit because she has failed to establish that she was disabled at the time of termination, did not alert Petrunich of the disability, and failed to rebut Petrunich's legitimate non-discriminatory reasons for terminating her.[30]

McGlothlin responds that there is at least a factual issue that she made reasonable pregnancy related requests for accommodations for more frequent bathroom breaks and to avoid taking x-rays, and that those requests were denied improperly by Petrunich.[31] She also contends that there is at least a clear dispute of fact as to whether she has rebutted Petrunich's proffered reason for her termination, referencing her excellent performance reviews and factual inconsistencies in Petrunich's explanation.[32] She claims that there is the same factual dispute regarding her DFRA claim.[33] Finally, McGlothlin contends her disability failure to accommodate claims do not fail because there is a sufficient record to show

---

[30] *Id.*, at 29-30.
[31] Pl.'s Ans. Br., at 13-15, D.I. 53.
[32] *Id.,* at 16-17.
[33] *Id.,* at 19-20.

McGlothlin requested and was denied accommodations for more frequent bathroom breaks, to be relieved from taking x-rays and to recover from childbirth and pregnancy related impairments.[34]

## IV. STANDARD OF REVIEW

Under Superior Court Civil Rule 56(c) summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."[35] The moving party initially bears the burden of demonstrating that the undisputed facts support its claims or defenses.[36] If the moving party meets its burden, the burden shifts to the non-moving party to show that there are material issues of fact the ultimate fact-finder must resolve.[37] When considering a motion for summary judgment, the Court's function is to examine the record, including the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," in the light most favorable to the non-moving party to determine whether genuine issues of material fact exist "but not to decide such issues."[38] When material facts are in

---

[34] *Id.,* at 21.
[35] Super. Ct. Civ. R. 56(c); *Buckley v. State Farm Mut. Auto Ins. Co.*, 139 A.3d 845, 847 (Del. Super. Ct. 2015), aff'd, 140 A.3d 431 (Del. 2016) (quoting *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[36] *Sizemore,* 405 A.2d at 681.
[37] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[38] Super. Ct. Civ. R. 56(c); *Merrill v. Crothall-Am., Inc.*, 606 A.2d 96, 99-100 (Del. 1992).

dispute, or "it seems desirable to inquire more thoroughly into the facts to clarify the application of the law to the circumstances," summary judgment will not be appropriate.[39] However when the facts permit a reasonable person to draw but one inference, the question becomes one for decision as a matter of law.[40]

It is well-settled that Delaware courts have adopted the burden shifting framework set forth in *McDonnell Douglas* to analyze discrimination claims.[41] Under this framework, McGlothlin must first establish a *prima facie* case of discrimination. Her burden in establishing a *prima facie* case "is not particularly onerous."[42] If she succeeds in establishing a *prima facie* case, the burden shifts to Petrunich to proffer "legitimate non-discriminatory" reasons for its actions.[43] If Petrunich meets this burden, the burden again shifts to McGlothlin to demonstrate, by preponderance of the evidence, that Petrunich's rationale is pretextual.[44] Pursuant to *Fuentes v. Perskie,* in order to demonstrate that rationale is pretextual, McGlothlin must "point to some evidence, direct or circumstantial from which a factfinder could reasonably either (1) disbelieve the employer's articulated

[39] *Ebersole v. Lowengrub*, 180 A.2d 467, 468-70, (Del. 1962) (citing *Knapp v. Kinsey*, 249 F.2d 797 (6th Cir. 1957)).
[40] *Wooten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).
[41] *Miller v. State of Delaware, Dep't of Pub. Safety*, 2011 WL 1312286, at \*12 (Del. Super.).
[42] *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008).
[43] *See, Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 142 (2000).
[44] Pl.'s Ans. Br. at 42-43, D.I. 54.

legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating determinative cause of the employer's actions."[45] "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate employment action (that is the proffered reason is a pretext)."[46]

## V. DISCUSSION

The Complaint alleges that Petrunich violated Delaware statutes which prohibit various forms of discrimination by making it unlawful for employers to engage in adverse employment actions for discriminatory purposes. Adverse employment actions include discharge from employment and failure or refusal to make reasonable accommodations.[47] Generally, discrimination claims are analyzed under the three step *McDonnell Douglas* framework, which the Court does here. But Petrunich also maintains that in some circumstances, either there was no request for an accommodation, or accommodations were unnecessary. The Court addresses those contentions under standard summary judgment analysis.

---

[45] 32 F.3d 759, 764 (3d. Cir. 1994).
[46] *Harding v. Careerbuilder, LLC*, 168 Fed. Appx. 535, 537 (3d Cir.) (quoting *Fuentes*, 32 F.3d at 764).
[47] *See, e.g.,* 19 Del. C. § 701(a).

The first step under the *McDonnell Douglas* framework requires McGlothlin to establish a *prima facie* case of discrimination by a preponderance of the evidence.[48] To establish a *prima facie* case, McGlothlin must prove that: (a) she belonged to a protected class; (b) she was qualified for the position; (c) she suffered an adverse employment action; and (d) the circumstances surrounding the adverse employment action give rise to an inference of illegal discriminatory motive.[49] "Where the employee is pregnant or on maternity leave at the time the adverse employment action occurs, her status as a member of the protected class is evident and the traditional *prima facie* case is appropriate."[50] McGlothlin was pregnant, qualified, and terminated. The timing of the termination during maternity leave creates an inference of an illegal discriminatory motive in the Court's view. McGlothlin has established a *prima facie* case.

The burden then shifts to Petrunich to show a legitimate non-discriminatory reason for McGlothlin's termination.[51] Petrunich states that McGlothlin was terminated because of performance issues such as "unreliability, disruptive behavior,

---

[48] *Wagenhoffer v. Visionquest National, Ltd.*, 2016 WL 3947952 at *4 (July 14, 2016) (citing *Riner v. Nat.'l Cash Register*, 434 A.2d 375, 376-77 (1981)).
[49] *Wagenhoffer*, at *4 (citing *Conley v. State*, 2011 WL 113201, at *3-*4 (Del. Super. Ct. Jan. 11, 2011)).
[50] *Solomen v. Redwood Advisory Co.*, 183 F. Supp. 2d 748, 754 (E.D. Pa. 2002).
[51] *Wagenhoffer*, at *6 (citing *Spicer v. CADpult, Ltd.*, 2013 WL 6917142, at *5 (Del. Super. Ct. Nov. 15, 2013)).

and propensity to leave mid-workday without notice."[52]   If true, these reasons establish  legitimate non-discriminatory basis for McGlothlin's termination.

The existence of legitimate reasons to terminate McGlothlin's employment shifts the burden back to McGlothlin to show the reasons presented were mere pretexts to intentionally discriminate against her because of her pregnancy.[53]  To make this showing, McGlothlin must demonstrate that a reasonable person could: "(a) disbelieve [Petrunich's] articulated legitimate reasons; *or* (b) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Petrunich's] action."[54]   Accordingly, to avoid summary judgment, McGlothlin's evidence rebutting the Petrunich's proffered legitimate reasons must "allow a factfinder reasonably to infer that the employer's proffered non-discriminatory reasons was either a *post hoc* fabrication or otherwise did not actually motivate the employment action."[55]   Further, it is important to recognize that the *prima facie* case and pretext inquiries often overlap.[56]   With these considerations in mind,  the Court address the Counts of the Complaint in sequence.

---

[52] Def.'s Br. in Supp. Mot. Summ. J., at 25, D.I. 49.

[53] *Wagenhoffer*, at *6 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-56 (1981)).

[54] *Wagenhoffer*, at *6 (citing *Spicer,* 2013 WL 6917142, at *5).

[55] *Butz v. Lawns Unlimited Ltd.*, 568 F. Supp. 2d 468, 477 (D. Del. 2008).

[56] *Id.*

**A. Count I Alleging Violations of the Delaware Discrimination in Employment Act.**

In Count I of her Complaint, McGlothlin alleges that she "was subjected to discriminatory conduct which was perpetrated upon her by Dr. Petrunich and this conduct was based upon and directed at plaintiff by reason of her sex and pregnancy."[57] In particular, McGlothlin claims that Petrunich refused her three reasonable pregnancy related requests for accommodations: (1) that she be allowed to cease taking x-rays; (2) that she be allowed more frequent bathroom breaks; and (3) that she be given leave to recover from childbirth and pregnancy related impairments.[58] Instead, she was terminated.[59] Petrunich disputes the factual underpinning for each of the purported accommodation requests.

**1. X-Rays.**

McGlothlin's first claim is that Petrunich refused her a reasonable pregnancy accommodation to be excused from performing x-rays. Petrunich contends that, assuming McGlothlin requested to be relieved from taking x-rays, that request cannot be linked to her pregnancy because each x-ray room is equipped with remote controls and lead wall protections to allow the technician to take the x-ray safely from outside the room.[60] Petrunich further contends that it is McGlothlin's burden

---

[57] Compl., at ¶ 39, D.I. 1.
[58] *Id.,* at ¶¶ 40-41.
[59] *Id.,* at ¶ 42.
[60] Def.'s Op. Br., at 22, D.I. 49.

to show through expert opinion that these protections were insufficient, and she has failed to do that.[61]

McGlothlin disputes that there is any requirement under DDEA that she provide an expert opinion to establish that her request for accommodation was reasonable.[62] She argues little else except to say that Petrunich denied her request without discussion and held her accommodation request against her as evidenced by Dr. Petrunich considering her refusal to take x-rays unprofessional.[63]

It is unlawful for an employer to "Fail or refuse to make reasonable accommodations to the known limitations related to the pregnancy of an…employee,"[64] or to "Take adverse action against an employee…for requesting or using a reasonable accommodation to the known limitations related to the pregnancy of the employee."[65] The gravamen of the dispute about x-rays is whether relieving McGlothlin of her responsibility to take x-rays was a "reasonable" accommodation to her because of her pregnancy. Petrunich's position is that no additional accommodation was necessary due to her pregnancy because adequate protections from x-rays – lead walls and remote control - were already in place for all technicians. Further, McGlothlin has produced no expert opinion suggesting the

---

[61] *Id.*
[62] Pl.'s Ans. Br., at 13-14, D.I. 53.
[63] *Id.*
[64] 19 *Del. C.* § 711(a)(3)b.
[65] 19 *Del. C.* § 711(a)(3)f.

protections were inadequate. To that argument McGlothlin responds that DDEA does not require expert witnesses to establish the reasonableness of accommodations. Perhaps, but that response really does not answer the question. McGlothlin has a burden to establish that her requested accommodation was reasonable whether DDEA requires an expert or not. She cannot meet that burden simply by saying it is so.

Whether the protections installed by Petrunich were adequate is the type of question that is best resolved with the help of people knowledgeable about radiation exposure, in other words experts in that field. McGlothlin has not provided that assistance, or any other evidence to establish the reasonableness of the requested accommodation. Thus, she has failed to meet her burden to show that her accommodation request was reasonable. In any event, even if the Court were to assume that the request was reasonable, application of the *McDonnell Douglas* burden shifting framework does not change the result. McGlothlin fails to rebut Petrunich's non-discriminatory reason for denying the accommodation – that it was unnecessary due to adequate protections already in place.

### 2. Bathroom Breaks.

As to bathroom breaks, Petrunich argues that McGlothlin failed to establish that a need for more bathroom breaks was a known limitation related to her pregnancy, and even if it were, McGlothlin's only evidence that her request was

14

refused was one example when she was assisting in surgery.[66] McGlothlin admitted that it was important for her to remain in the operating room during surgery and that she did not need to ask Dr. Petrunich for permission to use the bathroom at other times.[67] In response, McGlothin references two portions of her deposition testimony.[68] The first is simply:

> Q. …Did you ask for any accommodations at work directly due to your anxiety?
>
> A. Not towards the anxiety. Towards the pregnancy, I asked for more bathroom breaks and – for some reason, I was urinating more because of the pregnancy, and he would not let me.[69]

The second reference provides no more detail:

> Q. Did you ever request more frequent bathroom breaks to Dr. Petrunich orally?
>
> A. Yes.[70]

Not cited by McGlothlin, but immediately prior to the cited portion of the transcript, McGlothlin testified that she had never put her request for more bathroom breaks in writing.[71] Also not cited by McGlothlin, but immediately following the cited portion is this exchange:

---

[66] Def.'s Op. Br., at 20-22, D.I. 49.
[67] *Id.*
[68] Pl.'s Ans. Br. at 5, 13, D.I. 53.
[69] Def.'s Op. Br., at Ex. D, McGlothlin Tr., at 16:11-16.
[70] *Id.,* at 45:14-18.
[71] *Id.,* at 45: 11-13.

Q.    How many times?

A.    I don't know.  I remember a time I needed to go to the bathroom.  I asked him, and he told me to wait, during my pregnancy.  That was just one example when I asked.

Q.    How many times did that happen?

A.    I don't know how many times.

Q.    But you recall today one time in particular where you claim he said no to a bathroom break?

A. Yeah.  I remember – yeah.

*                              *                              *

Q.    And there is no policy that you have to ask permission to use the bathroom.  You just go when you need to, right?

*                              *                              *

A.    Yes.

*                              *                              *

Q.    …Did you have to ask Dr. Petrunich permission to use the bathroom when you worked there?

A.    During procedures, I did.  When him and I were in a procedure, yes.

Q.    When you were not in a procedure, did you have to ask his permission?

A.    No.

*                              *                              *

16

Q. Was it important for you to stay in the operating room when Dr. Petrunich was operating?

A. Yes.

Q. Was that for patient safety?

A. For patient safety...[72]

In sum, it appears that McGlothlin can recall only one occasion when Dr. Petrunich refused her permission to use the bathroom. That occasion occurred during a surgical procedure when it was important for her to stay in the operating room for patient safety. Other than simply saying it happened during her pregnancy, McGlothlin provided no further details.

The Court assumes McGlothlin's more frequent need to use the bathroom was related to her pregnancy based on her personal experience. The Court further accepts that she orally requested an accommodation to use the bathroom more frequently. It is clear to the Court that, when accepting these facts in the light most favorable to McGlothlin, she has failed to establish that Petrunich denied her a reasonable accommodation. She was free to use the bathroom at any time other than during procedures, and she only cites a single occasion when she was denied a request for a bathroom break. Nevertheless, even if the Court were to accept her contention that Petrunich denied her a reasonable pregnancy related accommodation for more

---

[72] *Id.,* at 45:18 - 46:3; 46:18 – 46:20; 46:22; 47:2 – 47:9; 47:20 – 47:24.

frequent bathroom use, McGlothlin has failed to rebut Petrunich's legitimate non-discriminatory reason for denying it on the single occasion she recalls. In fact, she reinforces the legitimacy of that reason since she acknowledges that it was necessary for her to remain in the operating room for patient safety.

### 3. Pregnancy Leave.

Petrunich claims that it provided McGlothlin with pregnancy leave, but after she began her leave "abruptly and unilaterally" Dr. Petrunich "reviewed everything that had happened over the – to be honest, two years, that's when [he] elected the termination."[73] Petrunich notes that an employee can be terminated whether on leave or not if the reasons are unrelated to her pregnancy. McGlothlin agrees but disagrees with the proposition that her being on leave was unrelated to her termination. She points to her seven year employment history during which she was never disciplined for attendance or punctuality issues or for any disruptive behavior.[74] In fact, Petrunich's last performance review of McGlothlin rated her "exceptional" and "clearly outstanding" in fifteen different areas including attendance, courtesy, reliability, judgment, and knowledge.[75] This clear factual dispute, coupled with the timing of McGlothlin's termination, presents a "triable issue of fact as to whether there is a nexus between [McGlothlin's] pregnancy and the adverse employment

---

[73] Def.'s Op. Br., at 23, D.I. 49.
[74] Pl.'s Ans. Br., at 15-17, D.I. 53.
[75] *Id.*

action."[76] from which a factfinder could find that Petrunich's reasons for terminating McGlothlin were pretextual.

Accordingly, as to Count I, Petrunich's Motion for Summary Judgment is **GRANTED** as to McGlothlin's claims that Petrunich failed to provide reasonable accommodations to be excused from performing x-rays and for additional bathroom breaks. It is **DENIED** as to her claim that she was terminated while on leave due to her pregnancy.

B. **Count II Alleging Violations of the Delaware Family Responsibilities Act.**

Count II alleges that McGlothlin was discharged because of her family responsibilities. Those responsibilities included her obligation to care for her newborn daughter. While this claim is related to the claim McGlothlin advances in Count I, it is not identical. Nevertheless, the Court's analysis and conclusion are the same as in the Court's discussion of McGlothlin's pregnancy leave accommodation request set out in Section V.A.3. above. Accordingly, Petrunich's the Motion for Summary Judgment is **DENIED** as to Count II.

C. **Count III Alleging Violation of the Delaware Persons with Disabilities in Employment Act.**

In Count III, McGlothlin alleges that she suffered from pregnancy related impairments as a result of giving birth by cesarean section and that she suffered an

---

[76] *Tureversky v. FixtureOne Corp.,* 904 F. Supp. 2d 454, 464 (E.D. Pa. 2012).

adverse employment action as a result of those pregnancy related disabilities when she was terminated from employment.  Petrunich contends this claim suffers from a complete lack of proof.[77]  First, it argues that McGlothlin has failed to establish that Petrunich was even aware that she suffered from a cesarean section-related pregnancy impairment.[78]  Second, it argues that McGlothlin was not impaired because she admits that she was ready to return to work two weeks after giving birth.  Therefore, citing *Tice v. Centre Area Transportation Authority,*[79] she suffered no impairment that substantially limited a major life activity.[80]

In response, McGlothlin states that by virtue of having an emergency cesarean section, she suffered from pregnancy related impairments requiring two weeks to recover before returning to work.[81]  She does not address Petrunich's arguments that she never made it aware of any cesarean section-related impairments.  Instead, she relies on her original requests for accommodations made prior to going on pregnancy leave.  She respond to Petrunich's argument that any impairments, to the extent they existed, were not impairments that substantially affected a major life activity, and thus do not qualify as disabilities under the ADA, by saying that "Complications

---

[77] Def.'s Op. Br., at 27, D.I. 49.
[78] *Id.*
[79] 247 F. 3d 506, 513 (3d. Cir. 2001).
[80] Def.'s Op. Br., at 27-28, D.I. 49.
[81] Pl.'s Ans. Br., at 22, D.I. 53.

arising out of pregnancy can constitute disability sufficient to invoke the ADA, and that whether they actually rise to the level of disability is a question of fact."[82]

The DPDEPA makes it an unlawful employment practice for an employer to "Discharge or otherwise discriminate against qualified persons with disabilities with respect to compensation, terms, conditions or privileges of employment."[83] An allegation that Petrunich discharged McGlothlin because of a pregnancy related *disability* as alleged in Count III is not the same as her claims Petrunich discharged her or failed to accommodate her because she was pregnant as alleged in Count I. Pregnancy and disability are not synonymous. McGlothlin recognizes that pregnancy itself may not constitute a disability pursuant to the Americans with Disabilities Act, but complications arising out of a pregnancy can rise to the level of a disability.[84] Thus, the focus of the claim in Count III necessarily is McGlothlin's claimed disability resulting from the emergency cesarean section delivery of her child, not her pregnancy generally.

There is no evidence in the record that Petrunich was ever made aware that McGlothlin was disabled prior to it terminating her employment. Certainly,

---

[82] *Id.,* at 21.

[83] 19 *Del. C.* § 724(a)(2).

[84] Pl.'s Ans. Br., at 21 (citing *Oliver v. Scranton Materials, Inc.*, 2015 WL 1003981, at *7 (M.D. Pa. Mar. 5, 2015); *Brennan v. National Telephone Directory Corp.* 850 F. Supp. 331,333 (E.D. Pa 1994); *Smith v. Center for Organ Recovery and Education,* 2013 WL 4049550, at *1 (W.D. Pa. Aug. 9, 2013)), D.I. 53.

21

McGlothlin did not testify that she made Petrunich aware of her delivery and post-delivery impairments/disabilities. Even if the Court were to accept that Petrunich discriminated against McGlothlin because she was pregnant, it does not follow that it discriminated against her because she was disabled. So, while Petrunich obviously knew McGlothlin was pregnant, and in theory could be held liable for discriminating against her on that basis, it cannot be liable for discriminating against her on a basis about which it was unaware. If Petrunich was unaware of the disability, it cannot be said to have discriminated against McGlothlin because of that disability. Petrunich's Motion for Summary Judgment is **GRANTED** as to Count III.[85]

D. **Count IV Alleging Failure to Accommodate in Violation of the Delaware Persons with Disabilities Employment Protection Act.**

Count IV alleges that Petrunich failed to accommodate her alleged disability. But, as discussed above, her claimed disability was not merely being pregnant. Her disability was a result of complications from her emergency cesarean section, about which Petrunich was never informed. "A qualified person with a disability requesting a reasonable accommodation …must apprise the employer…of the person's disability…"[86] An employer's duty to make an investigation as to whether

---

[85] Because the Court grants Petrunich's motion as to Count III on the grounds that it was unaware of McGlothlin's claimed disability, it need not address whether McGlothlin was disabled in fact.

[86] 19 *Del. C.* § 723(a).

there are reasonable accommodations that can be made and then make them only arises "Once a qualified person with a disability has requested an accommodation."[87]

McGlothlin did not have the claimed disability when she requested her pregnancy leave accommodation. Once she became disabled and a "qualified person with a disability," she never requested a reasonable accommodation for her disability. For that reason, Petrunich's Motion for Summary Judgment is **GRANTED** as to Count IV.

## VI. CONCLUSION

For the reasons set forth above Defendant Petrunich Oral & Maxillofacial Surgery's Motion for Summary Judgment is **GRANTED** as to Count I, (but only as to Plaintiff Julia McGlothlin's claims that she was subjected to discriminatory conduct when she was refused pregnancy related accommodations to be excused from taking x-rays and for more frequent bathroom breaks), Count III, and Count IV. It is **DENIED** as to Count I, (but only as to Plaintiff Julia McGlothlin's claim that she was refused pregnancy leave when she was terminated while on leave) and Count II.

**IT IS SO ORDERED.**

/s/ *Ferris W. Wharton*
Ferris W. Wharton, J.

---

[87] 19 *Del. C.* § 723(b).